Hartridge *vs.* Wesson.

No. 9.—CHARLES HARTRIDGE, plaintiff in error, *vs.* D. and A. WESSON, defendants.

[1.] A motion in arrest of judgment may be made at any time before the adjournment of the court, at which the cause is finally disposed of; the defendant's right to make such motion will not be defeated by the entering up a judgment by the plaintiff on the record, before the adjournment of the court, at which the cause is finally determined.

[2.] By the provisions of the Act of 26th Dec. 1826, *notice* of the non-acceptance of a bill of exchange, drawn in this State, on persons residing in New York, and indorsed in this State, is not necessary to bind the indorser, when not payable at a chartered bank.

Motion for a new trial and in arrest of Judgment, from Chatham Superior Court, May term, 1847.

This action was founded on a bill of exchange, dated Savannah, May 18th, 1842, drawn by C. F. and J. L. Smith, on Messrs. Henry Coit & Co., New York, in favor of Charles Hartridge, or order, for $941$\frac{62}{100}$, and indorsed by Charles Hartridge, who was the defendant in the suit below. The Bill was noted for non-acceptance at New York, 24th May, 1842.

On the trial of the cause, there was a verdict for the plaintiffs, and a motion made for a new trial on various grounds, all of which were overruled by the court below; which need not be stated here, as there was no *brief* of the testimony filed, and that was one of the grounds for refusing the new trial in the court below, and sustained in this court.

There was also a motion in arrest of judgment, which was overruled by the court below. For a full statement of the facts of the case, see the judgment of the court.

MULFORD MARSH, for plaintiff in error.

S. COHEN, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

It appears from the record in this case, that suit was instituted against the defendant below, as the indorser of a bill of exchange drawn in the City of Savannah, by C. F. and J. L. Smith, on

Messrs. Henry Coit & Co., New York, for the sum of $941$\frac{62}{100}$. On the trial of the cause, there was a verdict for the plaintiffs, and a motion for a new trial on several grounds, and also a motion in arrest of judgment, both of which were overruled by the court below; whereupon the defendant excepted and now assigns the same for error in this court.

The court below, very properly, in our judgment, ruled that it would not entertain a motion for new trial, when the party, moving for the same, had omitted to file a *brief* of the testimony had on the trial of the cause, in accordance with the sixty-first rule of practice, adopted by the judges in convention. Such was our judgment in *Graddy vs. Hightower, et al,* 1 *Kelly,* 254, and which we have since affirmed in a case not yet reported. We do not therefore consider it an open question.

It also appears from the record, that when the application for a new trial was made, the court on the 11th day of Feb. 1847, ordered the application to be filed, and that the same operate as a *supersedeas* until the further order of the court. Afterwards, on the 19th day of Feb., and before there was any further order of the court, the plaintiff's attorney entered up a judgment against the defendant, for the amount specified in the verdict.

[1.] A preliminary question was raised by the counsel for the defendants in error, as to whether the motion in arrest of judgment could be heard, after the judgment had been entered. By the judiciary Act of 1799, the party in whose favor a verdict is rendered, may at any time within four days after the adjournment of the court, sign judgment thereon at the Clerk's Office. *Prince's Dig.* 426.

This Act contemplates that the proceedings in the cause are at an end when the court adjourns. The plaintiff cannot, by entering up his judgment during the term, prevent the defendant from exercising his right to move the court to arrest the judgment at any time before its adjournment. Strictly speaking, the plaintiff has no right to enter up his judgment, until after the adjournment of the court, and if he does so enter it, the defendant will not lose any of his rights thereby. In this case there was a supersedeas ordered by the court—the trial of the cause had not terminated, when the judgment was entered. We do not intend to say the judgment was void, but we mean to say that the entering up of the judgment before the motion for new trial was disposed of, and

Hartridge *vs.* Wesson.

while the order granting a supersedeas in the cause was in force, did not deprive the defendant of the right to move the court to arrest the judgment, during the term of the court, at which the motion for a new trial was refused. At any time during the term of the court at which the motion for a new trial was refused, the defendant had the right to make his motion in arrest of judgment, notwithstanding the plaintiff's attorneys had entered up a judgment before the motion for new trial had been disposed of.

The grounds of the defendant's motion in arrest of judgment, must therefore be considered, which are as follows. First, because, from the plaintiff's own showing, they are not entitled to recover, not having set forth any legal cause of action. Second, because, from the plaintiff's own showing, the bill of exchange, sued upon in this case, is a foreign bill, and payable sixty days after sight, and not accepted by the drawers; and the plaintiffs have not alleged any *protest* for non-acceptance or any *due notice* of non-acceptance and protest for non-acceptance, to the defendant.

There are three other specifications of error in the record, based on the same grounds substantially as above stated. The objection to the declaration is, that there is no averment of any *protest* for non-acceptance of the bill, or any *notice* of non-acceptance and protest for non-acceptance.

It is admitted, that if the Act of 1826 applies to foreign bills of exchange, then the declaration is good; but it is insisted that Act does not apply to them. The Act of 26th Dec. 1826, is entitled " An Act to define the liability of indorsers of promissory notes, and *other instruments*, and to place them upon the same footing with securities. The Act then declares : " From and after the passage of this act, that the practice heretofore required of making a demand of the makers of promissory notes, and *other instruments*, for the payment and performance of the same, and their giving notice of such demand within a reasonable time, to the indorsers of said promissory notes and *other instruments*, shall cease and become entirely unnecessary to bind said indorsers ; and whenever any person whatever indorses a promissory note, or *other instrument*, he shall be held, taken, and considered as security to the same, and be in all respects bound as security, until said promissory note or *other instrument*. is paid off and discharged ; and shall be liable to be sued in the same manner and in the same action with the principal or maker of said promissory notes; or *other in-*

*struments*, any law, practice, or usage to the contrary notwithstanding. Provided, always, that nothing herein contained shall extend to any promissory notes which shall be given for the purpose of negotiation, or intended to be negotiated at any chartered bank, or which may be deposited in any chartered bank for collection." *Prince's Dig.* 462. This is a foreign bill, drawn in Georgia, upon the drawees in the State of New York, and indorsed by the defendant in Georgia. The declaration sets forth the drawing of the bill, the indorsement, presentment for acceptance, the non-acceptance by the drawees, that it was noted for non-acceptance; the presentation of the bill for payment, the non-payment of it, and notice of non-payment; but there is no allegation of *protest* for non-acceptance or *notice* of non-acceptance to the defendant. By the law merchant, it was necessary for the plaintiffs to aver a *protest* for non-acceptance and *notice* to the indorser to entitle them to recover. Perhaps the omission to aver the bill had been *protested*, would not have been good cause to have arrested the judgment; but it certainly would have been good cause for a special demurrer.

[2.] Does the Act of 1826 apply to foreign bills of exchange ? If it does, then the averment of *notice* to the defendant was not necessary to entitle the plaintiffs to recover. The object of the act, as declared by its title, is, "*to define the liability* of indorsers of promissory notes, and *other instruments*." The enacting clause of the act declares, "that the practice heretofore required, of making a demand of the makers of promissory notes, and *other instruments*," for the payment and *performance* of the same, and giving *notice* of such demand within a reasonable time, to the indorsers of said promissory notes, and *other instruments*, shall cease and become entirely unnecessary to bind said indorsers."

What *other instruments* did the legislature have in view, other than promissory notes? Such instruments, as might be *indorsed* by individuals, and who were entitled to *notice*, to bind them. What *other instruments*, besides promissory notes, were usually negotiated, and transferred by *indorsement*, and which required *notice* to bind the indorser according to the law and practice that existed, at the time of the enactment of the statute ? Most certainly, bills of exchange, both foreign and inland, were such *other instruments*. If the legislature did not intend to include bills of exchange by the name of "*other instruments*," what particular class

Hartridge *vs.* Wesson.

of instruments was intended to have been included? To give effect to this part of the statute, bills of exchange would necessarily seem to be included under the term " *other instruments.*" Bills of exchange and promissory notes, are the instruments used for commercial purposes: and which are usually *indorsed* in commercial transactions, and the object of the act is, to *define the liability of indorsers*, not only on promissory notes, but *other instruments.* The Act does define the *liability* of indorsers on promissory notes and other instruments, by declaring that demand and notice "shall cease, and become entirely unnecessary to bind said indorsers." But the Act further declares, that "Whenever any person whatever indorses a promissory note or *other instrument*, he shall be liable to be sued in the *same manner*, and in the same action with the principal or *maker* of said promissory note, or other instrument, any law, practice, or usage to the contrary notwithstanding." When the maker of a promissory note, or the acceptor of a bill of exchange is sued, it is not necessary to aver demand and *notice*, to entitle the plaintiff to recover, because they are the parties *primarily* liable ; and it appears to have been the object of the legislature to dispense with any demand upon the parties *primarily* liable for the payment of notes, and *other instruments*, and to dispense with notice to the indorsers thereof, in order to bind them for such payment; except such as may be considered within the proviso to the act, where a chartered bank may be the holder, or such as were intended to be negotiated at a chartered bank, such intention being apparent on the face of the paper. Our judgment then, is, that foreign bills of exchange, are embraced in the act by the words, " *other instruments*," and that notice was not necessary to bind the defendant as indorser, as it does not appear on the face of the paper it was intended to be negotiated at a chartered bank. We are aware that the term " other instruments" is omitted in the proviso to the statute, but the plaintiff in error certainly cannot derive any aid in favor of his motion by that omission.

Whether bills of exchange, payable at a chartered bank, stand on the same footing as promissory notes so made payable, taking into view the object, reason and equity of the whole statute, it is not now necessary to determine, as that point is not made in the record before us. As to the policy of this statute, which alters and breaks down the common law applicable to bills of ex-

change, which was suggested on the argument, we have nothing to do; perhaps the statute may be unwise in this particular, as most attempts to *simplify* the law by legislative enactments, frequently are; creating doubts in regard to well settled principles, by ambiguous and imperfect enactments, which the courts are called upon to intepret. But it is not our province to make the laws; it is our business to expound and enforce them. Let the judgment of the court below be affirmed.