## BANK OF RICHLAND v. NICHOLSON.

1. In an action by the holder against the drawer of a domestic bill of exchange which has been discounted at a bank, it is not necessary, in order to charge the defendant, that it should appear that notice of dishonor was given to the drawer.
2. In such a suit, evidence showing the drawing of the bill and the failure of the drawee to accept, or a failure on the part of the acceptor to pay according to the tenor of the bill, makes a prima facie case, and any matter relied upon to discharge the drawer must be set up by way of defense.
3. The contract of the drawer of a domestic bill of exchange being in the nature of a contract of suretyship, he is relieved from liability under the same circumstances in which a surety would be ordinarily relieved, except that the release of the drawer is only to the extent of the injury sustained.
4. While the mere failure of the holder of a domestic bill of exchange to give the drawer notice that the same has been dishonored will not discharge him, if statements are made by the holder to the drawer to the effect that the bill has been paid, which statements lull the drawer into security, and as a consequence thereof injury results to him by reason of the depreciation in value of property pledged to secure the payment of the bill, the drawer will be discharged to the extent of the injury thus sustained.
5. Some portions of the charge which were excepted to were not in accord with the principles above stated.

Argued June 18, — Decided July 13, 1904.

Complaint.    Before Judge Littlejohn.    Stewart superior court. January 12, 1904.

*E. A. Hawkins,* for plaintiff.

*J. H. Lumpkin* and *J. B. Hudson,* for defendant.

COBB, J.    This was an action by the payee of an inland bill of exchange against the drawer.    The defense was, that the drawer had not been given notice of dishonor within a reasonable time after the refusal of the drawee to pay; that he had been notified by the holder that the bill had been paid; that he relied upon this statement and was thus lulled into security, as a consequence of which he sustained damage by reason of the fall in the market price of cotton which was held as a pledge to secure the payment of the bill; the amount of the damage being in excess of the balance claimed to be due on the bill.    The jury returned a verdict for the defendant, and error is assigned upon the refusal of the court to grant a motion for a new trial, filed by the plaintiff. The motion contains, among others, assignments of error upon extracts from the judge's charge, and upon a ruling allowing the

defendant to open and conclude; it being contended that the admission made by the defendant for this purpose was insufficient, in that he failed to admit that he had received notice of dishonor in due time after the bill was dishonored.

1. Under the law merchant, drawers and indorsers of both inland and foreign bills of exchange were entitled to notice of dishonor. Protest was permissible on inland bills, but required on foreign bills. 7 Cyc. 1064, 1068, 1052; 4 Am. & Eng. Enc. Law, 397, 399; Broom's Com. 459, 477–478; Story on Bills of Ex. §§ 307, 281; Norton on Bills and Notes, 272, 281. In 1826 the practice, which originated under the law merchant, of making demand for payment upon the makers of promissory notes and other instruments, and giving notice of non-payment, within a reasonable time, to the indorsers, was in this State abolished by statute, as to all instruments within the law merchant, except promissory notes given for the purpose of negotiation, or intended to be negotiated, or left for collection at a chartered bank. Cobb's Dig. 594. In *Hartridge* v. *Wesson*, 4 *Ga.* 101, it was distinctly held that that portion of the act of 1826 which abolished the necessity for notice to indorsers was applicable in the case of an indorser of a foreign bill of exchange; but the question "whether bills of exchange payable at a chartered bank stand on the same footing as promissory notes so made payable," was distinctly left open. And in *Smith* v. *Barnes*, 24 *Ga.* 445, the statement was made that it was still an open question. In *Davies* v. *Byrne*, 10 *Ga.* 329, it was held that in a suit by an indorser against the drawer of a foreign bill of exchange it is necessary to aver notice of dishonor of the bill, or that which the plaintiff relies upon as an excuse for not giving notice, and also to aver protest for non-payment, or an excuse for not protesting. Judge Nisbet in the opinion says: "But it was indispensable that the plaintiff plead and show a protest for non-payment, or an excuse, which would be good in law, why it was not protested. These are familiar rules of the law merchant, and I shall not dwell upon them." No reference was made to the act of 1826. If drawers are within the terms of that act, the decision in 10 *Ga.* can not be reconciled with that in 4 *Ga.*, but if the act is limited in its operation to strict indorsers, then the two decisions are perfectly consistent with each other. In *Patten* v. *Newell*, 30 *Ga.* 271, 274, where an inland bill

of exchange had been drawn by a person who had no funds in the hands of the drawee, Judge Lyon says: "The controversy was between the holder and the drawer, and, as between them, the drawer is not entitled to notice of non-acceptance or of non-payment, whether the paper was a 'bank transaction' or not, unless the drawer has sustained some injury in consequence of a failure to demand payment at a proper time. The Code of 1863 provided that indorsers of both bills of exchange and promissory notes should be given notice of non-acceptance, or non-payment, and of protest, within a reasonable time, or they would be discharged in all cases where the bill or note was given for the purpose of negotiation, or intended to be negotiated, at a chartered bank, but that in no other case and upon no other bill or note was notice or protest necessary. Code 1863, § 2731. This section was amended in 1876 (Acts 1876, p. 18), by distinctly providing that it should not be necessary to protest in order to bind indorsers, except when the paper was payable on its face, or discounted, or left for collection, at a bank or banker's office. See Civil Code, § 3688.

In *Holmes* v. *Pratt*, 34 *Ga.* 558, it was held that demand and notice were not necessary to charge the drawer of a foreign bill of exchange. While there is an intimation that demand and notice would be necessary if the bill had been payable or intended to be negotiated at a chartered bank, there was no direct ruling to this effect. In *Hall* v. *Davis*, 41 *Ga.* 614, which was a suit by the holder against the drawer of a foreign bill of exchange, it was held that notice of non-payment, to the drawer, was a condition precedent to his liability. This case is in line with *Davies* v. *Byrne*, supra. In the opinion Mr. Chief Justice Lochrane distinctly states, that the act of 1826, as contained in the code, applies only to indorsers, and does not alter, repeal, or annul the well-established principles of the law governing the liability of drawers and their rights with reference to notice of dishonor; in other words, that as to this matter the law merchant controls. This decision seems to be in conflict with the ruling in *Holmes* v. *Pratt*, supra; and if the two decisions are irreconcilable, the earlier decision would control. In *Gilbert* v. *Seymour*, 44 *Ga.* 63, the defendants were both drawers and indorsers of a domestic bill of exchange, not a bank paper; and it was held, that under the code they were

not entitled to notice as indorsers, and that as they were bound as indorsers without notice, they could not take advantage of the failure to give them notice as drawers. Mr. Chief Justice Lochrane remarked that, in his opinion, if the drawers and indorsers had been different persons, the drawers would have been entitled to notice. In *McLaren* v. *Bank*, 52 *Ga.* 131, which was a suit by the holder of a domestic bill of exchange against the drawer, it was held that if it did not appear upon the face of the bill that it was a bank paper, the drawer could not show by parol evidence that it was intended to be such ; Judge McCay remarking : "It is not necessary to go into the vexed question whether the word indorsers in the act of 1826 includes drawers. The facts of this case show that the acceptor was an accommodation acceptor, and in such cases the drawer is not entitled to notice, even at common law, unless he shows special damage from the want of notice." In *Pannell* v. *Phillips*, 55 *Ga.* 618, and *High* v. *Cox*, Ibid. 662, each of which was a suit against the drawer of a domestic bill of exchange, it was held that it was not necessary to show protest and notice to the drawer, the bill in neither case being a bank paper within the meaning of the section of the code. There is in each case a dictum to the effect that if the bill had been a bank paper, notice would have been necessary. In *Williams* v. *Lewis*, 69 *Ga.* 825, which was a suit against both the drawers and indorsers of an inland bill of exchange, it was held that as the bill was not a bank paper, notice of dishonor was not necessary to charge either the indorsers or the drawers. It will thus be seen that in three cases there has been a distinct ruling that in order to charge the drawer of a domestic bill of exchange which is not a bank paper within the meaning of the section of the code, notice of dishonor is not necessary. See also, in this connection, *Wright* v. *Shorter*, 56 *Ga.* 77. While there is some conflict in the rulings with reference to foreign bills of exchange, the decisions appear to be harmonious as regards domestic bills. The question presented in the present case is whether the drawer of a domestic bill of exchange which is discounted at a bank is entitled to notice of dishonor. There are dicta in the decisions just above cited to the effect that drawers of a bill of exchange are included in the term indorsers, appearing in the act of 1826, now embraced in the Civil Code, § 3688, but the only distinct ruling on this subject is that

contained in *Hall* v. *Davis*, 41 *Ga.* 614, where it was held that the act did not apply to drawers. . We are bound by this ruling, though in following it an anomalous state of affairs is brought about. This decision recognizes the law merchant as operative in the case of drawers, under which they were entitled to notice, but we are equally bound by the decisions which hold that the drawers of domestic bills of exchange are not entitled to notice. If the act of 1826 had been held applicable to drawers, then the three decisions referred to would have been sound and logical; but it having been held that drawers were not embraced within the act, the effect of the three decisions is to hold that the law merchant is no longer of force with reference to this matter. So that the drawer is not entitled to notice under the act, because he is not an indorser; and he is not entitled to notice under the law merchant, because the decisions hold that this rule of the law merchant does not apply to domestic bills of exchange. It is not necessary to determine in the present case what would be the rights of the drawer of a foreign bill of exchange.

The purpose of the act of 1826, in abrogating the rule requiring notice of dishonor to indorsers, was by its very terms to place an indorser upon the same footing as a surety. The decisions above referred to, in reference to the right of the drawer of a domestic bill of exchange, have the same effect upon the rights of drawers as the act of 1826 has upon the rights of indorsers. The contract of the drawer is that if the drawee does not accept he will pay, and if the drawee does not pay after acceptance he will. See, in this connection, *Manry* v. *Waxelbaum*, 108 *Ga.* 17. After acceptance the contract of the drawer is one of suretyship (*Davis* v. *Baker*, 71 *Ga.* 33), and between the drawing and the acceptance it is one in the nature of suretyship. Not being entitled to notice of dishonor in either event, he is not entitled to be discharged from his obligation to pay, except under those circumstances where a surety would be discharged, and then only to the extent of the injury he has sustained at the hands of the holder. The moment it appears that the bill has been drawn, that acceptance has been refused, or that there has been an acceptance and that payment according to the tenor of the bill has been refused, a prima facie case is made in favor of the holder against the drawer; and if for any reason the drawer has been discharged, the

facts relied upon to establish the discharge must be pleaded and proved by way of defense. . The drawer not being entitled to notice as a matter of right, the mere fact that he did not have notice of the dishonor of the bill will not alone be a sufficient reason for discharging him from liability. The fact that notice was not given might be relevant, and, in connection with other circumstances, sufficient to authorize a discharge of the drawer to the extent of his injury. If there has been not only a failure to give notice, but positive statements made by the holder to the drawer that the bill has been paid, and the drawer is thus lulled into security, and injury results to him from his inactivity brought about by the statement of the holder, the drawer would be discharged to the extent that he has been injured. Bank checks, although in their nature somewhat resembling inland bills of exchange, are governed by rules peculiar to themselves, which would not apply to an ordinary bill of exchange. See *Daniels* v. *Kyle*, 1 *Ga.* 304, and cit., s. c. 5 *Ga.* 245, and Van Epps' annotations to both cases. See also *Haynes* v. *Wesley*, 112 *Ga.* 671; Big. on Bills, Notes & Cheques (2d ed.), p. 75, § 3. Applying these rules to the present case, there was no error, for any reason assigned, in according to the defendant the right to open and conclude. Under the admission made, the plaintiff was entitled to take a verdict for the amount sued for, unless the defendant established by evidence some sufficient matter of defense. If the point had been made that the admission did not appear in the defendant's pleading, a different question would have arisen. See *Dorough* v. *Johnson*, 108 *Ga.* 812 (1) ; *Cen. Ry. Co.* v. *Morgan*, 110 *Ga.* 168 ; *Reid* v. *Sewell*, 111 *Ga.* 880.

Some portions of the charge upon which error was assigned were not in accord with the principles above laid down, and for that reason it is necessary to reverse the judgment refusing to grant a new trial. While the date of the statement made by Lamar, cashier of the Bank of Richland, to Nicholson, to the effect that the bill had been paid, would be material, it was not permissible to prove this date by the correspondence between Lamar and Council, cashier of the Americus bank, to which Nicholson was not a party and of which he had no notice. This correspondence might be used by Lamar to refresh his memory, but it was not admissible to show the time when the statement was made. The

charge in reference to the preponderance of the evidence was free from error. It is not necessary to refer specifically to the other assignments of error, some of which relate to matters which will probably not arise on another trial.

*Judgment reversed. All the Justices concur.*