CLARK, ROSSER & COMPANY *vs.* BRAND & HAMMONS.

62    23
e126  390

1. By the Code, section 2794, a contract of fire insurance, with its terms and stipulations, must be in writing. No stipulation is more material than the period of time for which the insurance is effected. The following writing (not signed, and no premium being actually paid) is not sufficient, though made by warehousemen for the purpose of binding themselves as insurers, and contained in their books immediately after an account therein of cotton marked [W], to the amount of two hundred bales or more, and said account showing on its face that the cotton was stored for and on account of Brand & Hammons: "Two hundred B | C., [W] insured to-day, p. v. o. Mr. H., @ 15c. from date."

2. Discretion not abused in refusing a new trial.

Contracts. Insurance. New trial. Before Judge HALL. Newton Superior Court. September Term, 1877.

Brand & Hammons brought trover against Clark, Rosser & Company for sixteen bales of cotton. The defendants were warehousemen with whom cotton had been stored by plaintiffs. The sole issue upon the trial was as to the propriety of certain charges made by defendants for insurance on the cotton. It was admitted that the plaintiffs had *authorized* the insurance of two hundred bales for one month, but defendants contended that no limit was fixed as to time. Plaintiffs also contended that they authorized the insurance to be taken out in some solvent company doing business in this state, and did not contemplate any assumption of the risk by the defendants. Upon these two points the testimony was distressingly conflicting. The only evidence of any insurance by defendants was the entry set forth in the first head-note. This contract, at fifteen cents per bale per month on two hundred bales, continued, as contended by defendants, for seven months, making plaintiffs liable to them for $210.00.

The court charged the jury as follows : "A contract of insurance must be in writing in order to be binding. If defendants claim to have insured the cotton, they must show

a contract of insurance in writing. If the book of defendants has on it the numbers and weights of the bales and the figures or marks, and there is connected with these entries an entry by either of the defendants on this book stating that a portion of the cotton is insured and the terms of the insurance, and you believe from the evidence that the entry was intended to denote that defendants insured the cotton, then the two entries taken together would make a contract of insurance in writing. Defendants could not charge plaintiffs with the cost of insurance unless plaintiffs authorized the insurance, or after the insurance was made, ratified the act of defendants in making the insurance. If plaintiffs authorized the defendants to insure their cotton—to take the risk themselves—the plaintiffs cannot recover unless the premium of insurance has been paid. But if the plaintiffs directed the defendants to insure their cotton in some solvent insurance company, and not to take the risk themselves, then, before the defendants can charge the plaintiffs with any amount for insurance, they must show that they insured the cotton as instructed."

The jury found for the plaintiffs, making no allowance for the charges for insurance. The defendants moved for a new trial because the verdict was contrary to law, evidence and the charge of the court.

The motion was overruled, and they excepted.

CLARK & PACE, for plaintiffs in error.

JOHN A. WIMPY, for defendants.

BLECKLEY, Justice.

1. The warehousemen's position is this: We made a contract of insurance with you, and for the risk we assumed, you owe us a certain sum as premium. The position of the owners of the cotton is that there was no valid contract of insurance, and therefore that no debt for premium was created. The writing said to embody a contract reads as

follows: " Two hundred B | C., [W] insured to-day, p. v. o., Mr. H., @ 15 cents from date." Taking this alone, or in connection with the account of cotton in the books containing the instrument, we do not think it amounts to a contract of insurance. Without scrutinizing it for other defects, it is fatally deficient in not specifying the period of time during which the insurance was to run. No element of a valid contract could be more material than this, and it so happens that it is upon this very element tha the parties are mainly at issue. No better illustration than the present case could occur of the necessity of fixing by the writing itself the length of time embraced in the contract. The language of section 2794 of the Code is as follows: " The contract of fire insurance is one whereby an individual or company, in consideration of a premium paid, agrees to indemnify the assured against loss by fire to the property described in the policy, according to the terms and stipulations thereof. Such contract, to be binding, must be in writing; but delivery is not necessary if. in other respects, the contract is consummated." It is plain that the terms and stipulations are to be in writing, for they are to be "thereof," that is, of the policy. A contract which expresses no time for the risk to continue is too vague and uncertain to be treated as complete. Such a contract is not "consummated."

2. Looking to the whole case and the evidence in support of it, there was no abuse of discretion in refusing a new trial.

Judgment affirmed.