## DELAWARE INSURANCE COMPANY *v.* PENNSYLVANIA FIRE INSURANCE COMPANY.

1. Where a suit is brought for damages growing out of a breach of a contract required to be in writing by the statute of frauds, the petition is not demurrable on the ground that it does not state whether the contract was in writing or not.

:2. But where a proceeding is brought for the purpose of reforming a written contract, the instrument which is sought to be reformed should be set forth in the petition, or attached thereto as an exhibit, so that from it and the allegations it may clearly appear that it does not conform to the real contract made by the parties. The petition should also show the particular mistake, or the fraud and mistake complained of, and how it occurred.

:3. Where a petition seeks to reform a written instrument as a contract between the parties, and also to enforce it, the allegations must be sufficient for both purposes.

·4. Under a statute of this State a contract of fire insurance must be in writing and signed by the insurer, or some person authorized to sign for it.

!5. The usual and proper place for the signature is at the end of the mat-

ter which it attests. But, in strict law, it will suffice if, with the intent. to constitute a signing, it is inserted in the writing at another place.

6. Where a petition alleged that the defendant insurance company reinsured the plaintiff company in a certain amount upon a risk which the latter had taken; that a copy of the written contract of reinsurance was attached as an exhibit to the petition; that the defendant executed and delivered to the plaintiff such paper as and for a written contract. of insurance, and that it was so received by the plaintiff and the premium due thereon paid; and where the paper so exhibited commenced with the name of the defendant and its general agent, and proceeded "do reinsure" the plaintiff, etc., the allegation was sufficient to withstand a ground of demurrer to the effect that it did not appear that the paper was signed.

7. Where it was alleged that an insurance company reinsured its risks with another company, and notified the insured that if policies of the insurer should require approval of transfers or other indorsements, the insured should make report to the reinsuring company; and that in pursuance of this, application was made to the reinsuring company for a vacancy permit, which was granted and signed by the reinsuring company, containing the words, "attached to and forming part of policy No. 4264 of the Delaware Ins. Co.," (the insurer) this was an acknowledgment of the policy of the number stated, and the signature to such permit would supply the lack of signing that policy, if it was unsigned. But a permit in the terms mentioned was not sufficient to operate as an acknowledgment of or signature to another paper, if it did not appear to be the policy referred to.

8. A plea of estoppel in pais, which did not allege that the defendant had misled the plaintiff, or that the latter had relied on any representation or conduct on the part of the former, and had changed its status or done or omitted to do anything by reason of any such representations. or conduct, but merely alleged that if the defendant had claimed that the contract of insurance had expired, the plaintiff would have been informed of the claim, and could have either caused the contract of insurance to be duly corrected, or in case of dispute or delay concerning it. could have protected itself by other insurance, was demurrable.

Submitted March 3,—Decided August 17, 1906.

Equitable petition. Before Judge Pendleton. Fulton superior court. May 12, 1905.

The Pennsylvania Fire Insurance Company brought suit against the Delaware Insurance Company, alleging in brief as follows: On or about May 9, 1900, the plaintiff issued its policy of insurance, whereby it insured certain property of one Stenzel for the term of three years from May 9, 1900, in the sum of eight thousand dollars; and on or about the same date the Delaware Insurance Company, through its agency in the city of Atlanta, reinsured the plaintiff in the sum of twenty-five hundred dollars upon its liability under

the policy issued to Stenzel. "By error of the scrivener who drew out the writing evidencing said contract, the term of said insurance was given as one year, and the date of expiration as May 9th, 1901, although the premium charged and received was for three (3) years and the term of expiration was May 9th, 1903. . . The Delaware Insurance Company was one of the regular reinsurers of the said Pennsylvania Fire Insurance Company, and that by contract and agreement it reinsured said company at the same rates which the said company, your petitioner, effected the original insurance upon which it was so reinsured, and that in this case the rate of insurance charged the said Stenzel for the term of three (3) years from May 9, 1900, to May 9, 1903, was ninety (90) cents per thousand [amended so as to read per hundred], and that the rate charged by said Delaware Insurance Company, and collected by it upon the twenty-five hundred ($2,500) dollars of reinsurance, was 90 cents per thousand or twenty-two and 50/100 ($22.50) dollars, which was duly paid to and received by said Delaware Insurance Company, and no part of which has been repaid." The Delaware Insurance Company after this time ceased doing business in the State of Georgia, and made a contract with the Westchester Fire Insurance Company by which the latter reinsured the risks of the former, and the Delaware Insurance Company so notified plaintiff, and advised it, if the policies of the defendant should require approval of transfer or other indorsement, to make report thereof to the Westchester Fire Insurance Company, giving its address. In pursuance of this direction, on May 31, 1901, plaintiff notified the Westchester Fire Insurance Company of a permission for the premises of Stenzel, so insured and reinsured, to remain vacant for a period of thirty days, and on June 17, 1901, the last-named company recognized the contract of reinsurance between the plaintiff and defendant as being in existence, and issued a vacancy permit in the following words: "Permission for premises herein named to remain vacant for a period of 30 days from date hereof. Attached to and forming part of policy No. 4264 of the Delaware Ins. Co. (Westchester). Atlanta, Ga., 6-17-01. Westchester Fire Insurance Co. Jno. H. Kelly, Asst. Sect." At the time of the application for this permission, and when it was granted, more than one year had elapsed from the date of the issuance of the policy of reinsurance, and by this action the defend-

ant, through its authorized agent, the Westchester Fire Insurance Company, recognized the contract of insurance as having been made and effected, and as being in existence and of full force. If, instead of making the indorsement mentioned, granting permission. and recognizing the contract of insurance as being of full force and effect on June 17, 1901, the defendant had asserted that the contract was for the term of one year only, and that it had then expired, "this petitioner would have been informed of the claim of defendant, and could have either caused said contract of insurance to be duly corrected, or, in case of dispute or delay concerning the same, could have protected itself by other reinsurance. But that by reason of said granting of said permission on said date, this petitioner was confirmed in the belief that said contract of insurance was for three (3) years, and was of force on said 17th day of June, 1901." On June 20th, upon receiving the vacancy permit and attaching it to the contract of insurance, plaintiff perceived that the date of expiration had been stated as May 9, 1901, and that the term was said to be for one year instead of for three years. On June 20 it notified the Westchester Company of the mistake, and that the reinsurance premium had been calculated and paid for three years, "and asked that they would have the correct expiration and terms stated." The Westchester Company advised plaintiff that this matter would have to be taken up directly with the Delaware Company, and on June 24 plaintiff advised the latter company of the mistake and asked that the necessary correction be made. Plaintiff is informed that the defendant notified the Westchester Company that the term was three years, and that it had received the full premium, and having reinsured with the Westchester Company for the term of one year only, the defendant remitted the balance of the premium for the additional term of two years, thus recognizing the existence of the contract of insurance for three years. On June 27, 1901, the premises were destroyed by fire. The owner sued the present plaintiff upon its policy, and obtained judgment. Plaintiff also incurred certain necessary expenses in making its defense. It made proof of loss to the defendant, but the latter denied liability. It was prayed that the contract be adjudged to be valid and binding; that it be reformed so as to be for the term of three years instead of for one year; that

the plaintiff have judgment; and for general relief.    The paper exhibited as being the contract of insurance was as follows:

"Southern Department.    The Delaware Insurance Company, of
Philadelphia.                        W. E. Chapin, Manager.
Amt. Insd. $2500.                               Agency No. 2 C.
Rate 90c.                                       Atlanta, Ga.
Premium $22.50.                                 Entry No. 4264.

"Do reinsure Pennsylvania Fire Ins. Co., of Philadelphia, Pa., in the sum of twenty-five hundred dollars, for the term of one year, from May 9th, 1900, to May 9th, 1901.    Map reference, Page No. 398, Block No. 49.    On $2500 of their liability as insurers under their special policy No. 1608, issued to H. Stenzel for $8,000, and covering as follows, viz.: [A full description of the property follows.]    It is hereby understood and agreed that such reinsurance is a pro rata part of each and every item insured by the policy of the reinsured company, and subject to the same risks, valuations, condition, and mode of settlement as may be taken or assumed by said company; it being expressly agreed, however, that notice of any change in the risk, or additional privileges granted, shall be at once given to this company.    Loss, if any, payable at the same time and in the same manner and pro rata with the amount paid by said company," etc.

Over objection an amendment of the petition was allowed, which alleged substantially as follows:    The paper attached to the declaration and which is set out above, was made by the Delaware Insurance Company, and delivered to the Pennsylvania Fire Insurance Company as and for a written contract of reinsurance of twenty-five hundred dollars of the liability of the plaintiff as insurer under its policy, and the paper was received by the plaintiff as such policy of reinsurance, and it paid to the defendant twenty-two and 50/100 dollars as premium due and charged upon such policy.    By reason of the facts alleged in the declaration the defendant recognized that on the 9th day of May, 1900, it made and effected a contract of insurance as in the declaration set forth, "and that said defendant company thereupon became and was and is estopped from denying that it had entered into such contract of insurance, or that said 'Exhibit A' is not a valid and binding contract of reinsurance between it and your petitioner."    It was also alleged that estoppel arose from the facts alleged in the original

petition.   The defendant filed both a general and special demurrer. It was overruled, and the defendant excepted.

*Burton Smith,* for plaintiff in error.

*King, Spalding & Little,* contra.

LUMPKIN, J.   (After stating the facts.)

1-3.   In a suit for damages growing out of a breach of a contract required by the statute of frauds to be in writing, the petition is not demurrable on the ground that it does not state whether the contract was in writing or not.   *Draper, Moore & Co.* v. *Macon Dry Goods Co.,* 103 *Ga.* 661; *Bluthenthal & Bickart* v. *Moore,* 106 *Ga.* 424; *Taliaferro* v. *Smiley,* 112 *Ga.* 62.   Where a proceeding is brought for the purpose of reforming a written contract, "the instrument which is sought to be reformed should be set forth in the bill, so that from it and the allegations in the bill of complaint it may clearly appear that it does not conform to the real contract made by the parties.   The bill should also show the particular mistake or the fraud and mistake complained of and how it occurred."   Van Zile's Eq. Pl. & Pr. § 419.   "It is not sufficient to allege that it was the intention of the parties to make an instrument that would accomplish a certain object, and ask the court to make a writing that will accomplish that object."   18 Enc. Pl. & Pr. 824; *Wall* v. *Arrington,* 13 *Ga.* 88, 92; *Marshall* v. *Drawhorne,* 27 *Ga.* 275; *Ligon* v. *Rogers,* 12 *Ga.* 286; *Smith* v. *Brooks,* 65 *Ga.* 356; *Bell* v. *Americus Railroad,* 76 *Ga.* 755.   "If a clause which the petitioner claims should have been inserted in the contract is not one which the parties agreed on and omitted through mistake, but merely one which ought as a matter of propriety to be inserted, a court of chancery will not interfere; it not being within its province to make or ameliorate contracts for parties." Thompsonville Co. *v.* Osgood, 26 Conn. 16; 2 Estee's Pl. (4th ed.) § 2806.   In this State relief may be sought in the same petition by having a written contract reformed, and also enforcing it. *Fleming* v. *Fire Ass'n,* 76 *Ga.* 678.   In order to accomplish this result, however, the petition must be adequate for both purposes: first, to reform the instrument; and second, to obtain judgment on it.   Here it is sought to reform the alleged contract so as to make the term of insurance three years instead of one.   Fairly construed, the petition alleged that the paper attached was the written contract sought to be corrected and enforced.   It was alleged that the

defendant was one of the regular insurers of the plaintiff, and by contract and agreement reinsured the plaintiff at the same rates at which the latter effected original insurance; that in this instance the rate charged the property owner for three years was ninety cents on each hundred dollars of value; that the plaintiff reinsured a part of the risk with the defendant and paid to it a premium at the same rate, and that, by error of the scrivener who drew up the writing evidencing the contract, the term was written as one year instead of three years. But it was not alleged that the defendant knew what rate was charged for the original insurance, or that it received the premium as being for three years insurance; or that the parties ever agreed or intended that the contract should be so written, or instructed the scrivener to that effect; or how the alleged mistake came to be made; or why the plaintiff failed to know the terms of its contract until it had expired. The allegations of the petition were insufficient for the purpose of reformation, and were demurrable.

4. At common law contracts of insurance were not required to be in writing, and generally, in the absence of any statutory or other positive provision, a parol contract of that character will be valid. 1 Cooley's Briefs on Insurance, 364; 1 May on Insurance (4th ed.), § 14. It has been held in Louisiana (Eagan *v.* Fireman's Ins. Co., 27 La. Ann. 368) that a contract of reinsurance must be in writing, as being the promise to pay the debt of another; but the statement is made without any reasoning or authority, and it has been elsewhere ruled that an agreement of reinsurance is not within the statute of frauds. 1 May on Insurance (4th ed.), § 12 A; Bartlett *v.* Fireman's Ins. Co., 77 Ia. 155; Com. Mut. Mar. Ins. Co. *v.* Union Mut. Ins. Co., 19 How. (U. S.) 318. By the Civil Code, § 2089, on the subject of fire insurance, it is declared that "such contract, to be binding, must be in writing." The defendant contends that this section contemplates that the contract of insurance must be signed. The plaintiff denies this; but insists that, if it be true, the contract under consideration was sufficiently signed to be binding. Without stopping to refer to the distinction between formal and simple contracts, which is less regarded in modern times than formerly, with reference to the point now before us, simple contracts may be considered under three heads: (1) contracts which are in writing, but which are neither required to be in writ-

ing, nor to be proved by writing; (2) contracts which are not re-
quired to be in writing, but which must be proved by writing; (3)
contracts which must be in writing. As to the first class it has
been held that at common law if the parties intend for such a con-
tract to take effect without signing, and agree upon and adopt the
written paper as being or containing the contract, this will suffice.
In Bishop on Contracts, § 342, it is said, "The common and appro-
priate method of attesting a writing is to sign it. But, in general,
a mere oral consent to what has been written out for a contract
will, at the common law, suffice." See also Leake on Contracts,
184. As illustrations, instances are given where one party signs a
contract and the other acquiesces in it, as a bill of lading accepted
by the shipper, and the like. In the discussion of this class of con-
tracts, the Supreme Court of Maine, in Miss. etc. Co. *v.* Swift, 86
Me. 248, makes the following concise statement: "Upon the ques-
tion whether the signing a written draft of the terms is essential
to the completion of a contract, *Held*: if the written draft is viewed
by the parties merely as a convenient memorial, or record of their
previous contract, its absence does not affect the binding force of
the contract; if, however, it is viewed as the consummation of the
negotiations, there is no contract until the written draft is finally
signed." 1 Beach, Mod. Law Con. § 3. In *Kidd* v. *Huff,* 105 *Ga.*
209, it was said that "a written instrument, although not signed,
will, if orally assented to by the parties, constitute the agreement.
Such instrument, however, will not be admissible in evidence until
it is shown, prima facie, that the terms were assented to." In
that case what purported to be a consent verdict and decree was
held to be inoperative as a judgment binding upon the parties, on
account of want of jurisdiction in the court, or for other valid rea-
son. It was set up by plea, however, that it had been agreed upon
by the parties and carried into effect, and that the fund arising
from it had been distributed among the parties, who received their
shares with knowledge of the fact. When offered in evidence the
verdict and decree were objected to, because defendant had not
proved that plaintiffs had assented to it. This court held that it
was inadmissible for the reason stated. The language quoted above
was used in discussing the plea which set up the agreement to the
decree and the action under it. It will be perceived that this was
not a contract which was required to be in writing, nor did the

case involve the enforcement of an executory contract, but included both the agreement and the action taken in reliance upon it.    Compare *Houston* v. *Polk,* 124 *Ga.* 103, 110.    It is quite clear that if it is contemplated by the parties that the contract shall be signed in order to consummate it, it will not be binding until so signed. but a somewhat informal or preliminary contract may be made binding, although it may be contemplated that the agreement will be put in more formal shape.    See, on this subject, Lynn *v.* Burgoyne, 52 Ky. (13 B. Mon.) 400; (contrast Dayton Ins. Co. *v.* Kelly, 24 Ohio St. 345; Kelly *v.* Com. Ins. Co., 10 Bosw. (N. Y.) 82) ; Arnold *v.* Scharbauer, 116 Fed. Rep. 492; Vastbinder *v.* Metcalf, 3 Ala. 100; Keating *v.* Nelson, 33 Ill. App. 357; Lewis *v.* Crow, 69 Ind. 434; Thomas *v.* Caldwell, 50 Ill. 138; Waggeman *v.* Bracken, 52 Ill. 468; Wetenkamp *v.* Billigh, 27 Ill. App. 585; Fish *v.* Johnson, 16 La. Ann. 29; Ayers *v.* Herring (Tex. Civ. App.), 32 S. W. 1060; Lathrop *v.* Bramhall, 64 N. Y. 366; Painter *v.* Mauldin, 119 Ala. 88, 72 Am. St. Rep. 902; Gay *v.* Murphy, 134 Mo. 98, 56 Am. St. Rep. 496.

The second class of cases to which reference was made above consists principally, if not entirely, of those which fall within the statute of frauds.    (The difference in verbiage between the 4th. and 17th sections need not be mentioned.)    In Townsend *v.* Hargraves, 118 Mass. 325, the court said, "the purpose of this celebrated enactment as declared in the preamble, and gathered from its provisions, is to prevent fraud and falsehood by requiring a, party who seeks to enforce an oral contract in the court to produce as additional evidence some written memorandum signed by the party sought to be charged, or prove some act confirmatory of the contract relied on.    It does not prohibit such contract.    It does. not declare that it shall be void or illegal unless certain formalities. are observed.    If executed, the effect of its performance on the rights of the parties is not changed, and the consideration may be recovered."    The great object was to require *as evidence of the contract* some memorandum of the agreement in writing, signed by the party or parties to be charged.    Barry *v.* Coombe, 1 Peters (U. S.), 651; McConnell *v.* Brillhart, 17 Ill. 360; *Obear* v. *First National Bank,* 97 *Ga.* 590-2.    The statute as adopted into our code differs somewhat in language from the original statute of frauds; but how far such changes in expression are to be treated

as material or altering the construction is not here involved. See *Turner* v. *Lorillard Co.,* 100 *Ga.* 645; Townsend v. Hargraves, 118 Mass. 325. As to what signing will meet the requirement of the statute of frauds more will be said presently.

The third class of contracts referred to are those which must be in writing. As already stated, the statute of this State requires, not merely that there should be some written memorandum as evidence of a contract of fire insurance, but that such a contract to be binding must be in writing. While, as shown above, there is high authority for holding that "a written instrument, although not signed by the parties, will, if orally assented to by them, constitute the agreement between them," it must be confessed that it seems to the writer somewhat anomalous to hold that an instrument can strictly be called *a written contract* which is entirely unsigned. One would naturally expect, when an instrument is claimed to be a written contract, to find that fact apparent on the face of the paper itself. The signature evidences the agreement of the parties to be bound by the instrument, and it sounds somewhat inconsistent to speak of a written contract which must be proved to be an agreement at all by a resort to parol evidence Promissory notes must be signed; but it is claimed that they stand on a different basis. It may be that a proposition in writing by one party (referred to as "the party to be charged"), which is orally accepted by the other, will answer the demands of the statute of frauds. Merritt v. Clason, 12 Johns, 102, 7 Am. Dec. 286; Ex'rs of Clason v. Voorhees, 14 Johnson, 484; Brandon Mfg. Co. v. Morse, 48 Vt. 322; Browne, Stat. Frauds, § 365; Reuss v. Picksley, L. R. 1 Exch. 342. But without discussing decisions which seem now to be well settled, it is sufficient to hold that under our statute it is contemplated that the whole contract of insurance shall be in writing, and that it shall be signed by the insurer. In *Planters Assn.* v. *DeLoach,* 113 *Ga.* 802, it was said: "A writing in the form of a policy of fire insurance will not constitute a valid contract of insurance, when it is not, at the time the contract therein purports to go into effect, executed by one authorized to execute contracts in behalf of the alleged insurer." In the opinion (page 808) it was said: "The writing relied on to make the contract of insurance not having been signed by any one authorized by the association to execute contracts in its behalf at the time

that it is claimed that the contract was entered into, the court erred in not excluding the paper from evidence." There a former president had signed a number of blanks as a matter of convenience to himself, and after his term of office had expired an agent delivered one of these policies; but the association declined to treat the holder of the policy as a member, or to recognize such delivery by its agents. See also Peoria Ins. Co. *v.* Walser, 22 Ind. 73; Water Comm'rs *v.* Brown, 32 N. J. L. 504.

Section 2089 of the Civil Code, which requires the contract of fire insurance to be in writing in order to be binding, was codified in the original code, which went into effect in 1863. Code of 1863, § 2744. In 1893 an act was passed providing for the granting of charters to insurance companies in this State, their organization, and the conduct of business by them. This act is now codified. Civil Code, §§ 2007 et seq. In section 2022 it is provided that "no policy or other contract of said corporation shall be binding except it be signed by the president or vice-president and secretary or assistant secretary of the company." While this law is applicable only to companies chartered under the act, yet it serves to indicate the legislative policy that insurance contracts should be in writing and signed. The case of *Clark, Rosser & Co.* v. *Brand & Hammons,* 62 *Ga.* 23, was cited by counsel for the plaintiff; but no question was raised or determined there as to the necessity for signing. It was held that an entry by warehousemen on their books in these words: "Two hundred B/C., [W] insured to-day, p. v. o. Mr. H., @ 15c. from date," unsigned, and with no premium paid, was not sufficient. Bleckley, J., said: "Without scrutinizing it for other defects, it is fatally deficient in not specifying the period of time during which the insurance was to run." In *Mitchell* v. *Universal Life Ins. Co.,* 54 *Ga.* 289, it was held that "A contract required by law to be in writing can not be shown to have been altered by parol after its execution." In that case the distinction was recognized between a simple contract in writing, and one which is required by law to be in writing. This was again recognized in *Simonton* v. *Liverpool Ins. Co.,* 51 *Ga.* 76. In Vidvard *v.* Cushman, 35 Hun, 18, it was held that where, after the execution of a lease in writing, a clause was inserted in it by the lessors, in the presence and with the consent of the lessee, such insertion modified the original contract, and it was not necessary

that the lease should be again signed or re-executed. ·In the case of *Simonton* v. *Liverpool Ins.* Co., supra, the court treated a permission for the removal of property from one store to another as being in the nature of a new insurance contract. Whether this was a proper view, or whether a provision for a forfeiture of the policy upon removal of the property may be waived by parol, if the agent has authority, is not involved in this case. See *Carrugi* v. *Atlantic Fire Ins. Co.*, 40 *Ga.* 135; *City Fire Ins. Co.* v. *Carrugi*, 41 *Ga.* 660; *Western Assurance Co.* v. *Williams*, 94 *Ga.* 128; *Morris* v. *Orient Ins. Co.*, 106 *Ga.* 472; *Lippman* v. *Ætna Ins. Co.*, 108 *Ga.* 391.

5, 6. If under the statute of this State a contract of insurance is required to be in writing and signed by the insurer or on its behalf, did the allegations of the petition show a sufficient signature? On this question there is an analogy between the law touching contracts of insurance and the statute of frauds which requires that there shall be a memorandum in writing signed by the party to be charged. Under that statute a signing was necessary. It has frequently been held, however, that signing, whether in the caption or body or at the end of the instrument, will suffice, but that it must be signed with intent to enter into it. See Barry *v.* Coombe, 1 Peters, 640; McConnell *v.* Brillhart, 17 Ill. 354, 65 Am. Dec. 661; Tingley *v.* Bellingham Bay Boom Co., 5 Wash. 644, 32 Pac. Rep. 737; Merritt *v.* Clason, 12 Johnson, 102, 7 Am. Dec. 286; Noe *v.* Hodges, 22 Tenn. 162; Browne, Stat. Fr. (5th ed.) § 357. A printed signature will also answer the requirements of the statute of frauds, if there be sufficient evidence of its adoption as such by the party to be charged. Browne, Stat. Fr. § 356. In Bishop on Contracts, § 344, it is said: "The usual and proper place for the signature is at the foot of the matter which it attests. But, in strict law, it will suffice if, with the intent to constitute a signing, it ·is inserted in the writing at any other place." Donnell Mfg. Co. *v.* Respass, 75 Mo. 420. The petition alleged that the defendant executed and delivered to the plaintiff the paper attached to the petition as and for a written contract of reinsurance, and that it was so received by the plaintiff, and. that it paid the premium due thereon. The paper commences with the name of the defendant and its general agent, and proceeds "do reinsure" the plaintiff, etc. If it was intended and delivered as a written· contract, this would

suffice, although the name may have appeared at the top instead of being subscribed. The allegation on this subject was sufficient to withstand the ground of the demurrer in so far as it attacks the paper as apparently unsigned. Browne, Stat. Fr. § 356, and cit. ·

7. Did the signature of the Westchester Fire Insurance Company to the vacancy permit, granted after the time when the alleged contract of the Delaware Company had expired according to its terms, operate as a signature to the paper pleaded as a contract of insurance so as to make it a valid contract under the statute, if it were not so before? Again looking to decisions under the statute of frauds, it has been held that it is not required that all the terms of the contract should be agreed to or written down at one and the same time, nor on one and the same piece of paper, provided the contents of the signed paper make such reference to the other paper or papers as to enable the court to construe them all together as containing all the terms of the bargain. *North* v. *Mendel,* 73 *Ga.* 400; *Turner* v. *Lorillard Co.,* 100 *Ga.* 645, 650 (2). The permit signed by the Westchester Company contained the words, "attached to, and forming part of policy No. 4264 of the Delaware Ins Co." If the Westchester Company was shown by the allegations to be the agent of the Delaware Company, this permit sufficiently referred to the policy of the number stated, and the signature would supply the lack of signing that policy, if it appeared that in fact there was such a written policy.

It is contended by the defendant that the Westchester Fire Insurance Company was not the agent of the defendant, and that its signature could not bind the defendant. The petition, however, alleges that the defendant ceased doing business in the State of Georgia, and reinsured its risks in the Westchester Company; that it so notified the plaintiff, and advised it, if policies of the defendant should require approval of transfers or other indorsements, that the plaintiff should make report thereof to the Westchester Company, giving its address; that, in pursuance of this, application was made to the Westchester Company, and the vacancy permit was signed and delivered. While the petition does not state that authority was specifically given to sign the particular permit involved, we think it does allege that the defendant referred the plaintiff to the Westchester Company to obtain necessary indorsements on its policies; and if this was such an indorse-

ment, no reason is apparent why it would not fall within that au-
thority.   See, on this subject, Browne on Statute of Frauds, § 370.
The nature of the authority is not questioned, but only whether
there was an agency.

8. In so far as the allegations in regard to the reinsurance and
the obtaining of the vacancy permit are relied on to work an estop-
pel, they are insufficient.   It is not alleged that the defendant mis-
led the plaintiff, or that the latter relied on any representation or
conduct on the part of the former, and changed its status, or in
fact did or omitted to do anything by reason of such conduct.   It
is alleged that if the defendant had not recognized the contract of
insurance as being in force after the lapse of one year from its
issuance, but had asserted that it had expired, "this petitioner
would have been informed of the claim of the defendant, and could
have either caused said contract of insurance to be duly corrected,
or, in case of dispute or delay concerning the same, could have
protected itself by other reinsurance.   But by reason of said grant-
ing of said permission on said date, this petitioner was confirmed
in its belief that said contract of insurance was for three (3)
years, and was of force on said 17th day of June, 1901."   It will
be seen at once that this allegation states what the plaintiff could
have done, but does not allege that it either did anything or failed
to do anything in reliance on any conduct or representations on
the part of the defendant.

From the foregoing discussion it is apparent that the judge of
the trial court erred in overruling some of the grounds of the de-
murrer.   As to others there was no error.

*Judgment reversed.   All the Justices concur, except Fish, C. J.,
absent.*