## PURSER v. ROUNTREE & McAFEE.

1. Where a promissory note given for the purchase-price of a horse contained a stipulation that "it is expressly understood that the said [sellers] do not warrant the health or soundness of said animal," a plea of failure of consideration filed to an action brought to recover the amount due on the note, on the ground that at the time the purchaser bought the horse and executed the note the sellers expressly stipulated that the horse was sound and that a swelling in the horse's leg would get well, but that the horse was unsound and the leg did not get well, and that the horse was unfit for the purpose for which it was bought, was properly stricken on motion.

2. In an action upon a promissory note which was given for the purchase-price of a certain horse, and which contained a stipulation as set out in the first headnote above, where the defense was that the note was procured by fraud in that the sellers of the horse made certain representations to the maker of the note with respect to the soundness of the horse and his suitableness as a farm and buggy animal, whereas he was unsound and unsuited to such purposes, but there was no averment that the purchaser was induced to sign the note by any false representations as to the contents of the note, or that he was prevented or under the circumstances was excused from ascertaining the same, it was not error to strike such plea on motion.

3. Where to an action on a promissory note, as set out in the preceding notes, the defendant filed an amended answer alleging that subsequently to the signing of the note the sellers agreed with the buyer that the latter was to take the horse home, and if it proved defective or unfit for use, or if the horse's swollen leg should render it useless or seriously impair its usefulness, the purchaser could return the horse to the sellers and get his note and fifty dollars he had paid on the purchase-price, and this agreement was assented to by the sellers before the delivery of the horse to the purchaser, and he received the horse on this distinct understanding; and where the allegations of the amendment did not show any consideration for the subsequent agreement, it was not error to strike the amendment on motion.

4. There was no error in directing a verdict for the plaintiffs.

DECEMBER 17, 1914.

Complaint. Before Judge Graham. Bleckley superior court. October 3, 1913.

*M. H. Boyer* and *Saffold & Stallings,* for plaintiff in error.

*F. Chambers & Son* and *H. E. Coates,* contra.

HILL, J. The plaintiffs in the court below brought suit against the defendant on a promissory note given for one sorrel horse. One of the stipulations in the note was that "it is expressly understood that the said Rountree and McAfee do not warrant the health or soundness of said animal." The defendant filed his answer to the petition, setting up, in substance, that the note was given for

the horse as alleged, and that at the time of the sale he paid plaintiffs fifty dollars as part of the purchase-price and took possession of the horse; that at the time the note was executed, plaintiffs told defendant that he could pay fifty dollars on the horse, take him home and try him, and if he proved defective or unfit for use as a first-class horse the defendant could return the horse and get his note and have his fifty dollars returned to him; that the defendant bought the horse and executed the note upon the express stipulation that the horse was sound and that the swelling in his leg would get well, but the horse was unsound and the leg did not get well; that the horse was wholly unfit for the purpose for which he was bought, being crippled and unable to do the work of a first-class work or buggy horse; that the defendant kept the horse, under the agreement made at the time the note was executed, for about two months; that the leg got no better, and defendant carried the horse back to plaintiffs and demanded his note and his money; that plaintiffs refused the demand, and defendant left the horse with plaintiffs; and that defendant has suffered the loss of the fifty dollars which was paid, and he asks judgment against the plaintiffs for that amount with interest. On oral motion of plaintiffs' counsel to strike the foregoing answer, the defendant by way of amendment averred: that the note sued on was obtained by fraud and deceit, which consisted of plaintiffs' recommending the horse to be perfectly sound, healthy, and a suitable farm, buggy, and family horse, plaintiffs knowing at the time that the horse was worthless and unfit for the purpose mentioned, he having a defective leg; that plaintiffs also deceived defendant by stating that if he would sign the note he could return the horse if unfit and unsound, and plaintiffs were so fair about stating the condition of the horse that defendant was induced by this deceit to sign the note sued on, the plaintiffs knowing at the time that the horse was unsound and defective, and that this was unknown to the defendant; that plaintiffs asked for a note for the horse, not stating what kind of note, or what the stipulations of the note were, and did not read the note to defendant or acquaint him of its contents; that "defendant, acting on the fraudulent statements of the plaintiffs as to the condition of the horse, and the apparently fair and honest statements of the plaintiffs as to what they would do and as to the condition of the horse, failed to

read said note, this being caused by his sense of inquiry being lulled by the statements of plaintiffs," on which he acted in signing the note. The statements made by plaintiffs to defendant were known to be deceitful and fraudulent by plaintiffs when made, and were intended and calculated to deceive the defendant and procure the note, and they did deceive and cheat the defendant and fraudulently obtain his signature to the note sued on; that plaintiffs told defendant, when discussing the condition of the leg of the horse, the leg at the time being swollen, that this swelling was caused from a cold, and that the horse would not be affected permanently by the defect, when in point of fact the swelling was caused from chronic ailment, a bone enlargement, which rendered him lame and unfit for use as a farm or buggy horse; and that this defect was well known, or should have been, at that time to plaintiffs, and was not known to the defendant and could not have been by reasonable diligence and inquiry. The defendant further amended his answer by alleging, that, subsequently to the signing and delivery of the note sued on and after the same was signed, plaintiffs agreed with defendant that defendant was to take the horse home, and that if the horse proved defective or unfit for use, or if the swollen leg should render the horse useless or seriously impair his usefulness, defendant could return the horse to plaintiffs and get his note and fifty dollars he had paid them; that this was assented to by defendant before the delivery of the horse to him, and he received the horse on this distinct understanding, which was an additional trade and agreement made subsequently to the signing of the note sued on; that, acting on this agreement, he took the horse home and kept him two months, properly caring for and treating him during that time, but the defect did prove serious and made the horse useless and unfit for the purposes and uses intended, and he was unable to do the work of a first-class buggy or work horse; and that defendant then returned the horse to plaintiffs and demanded his note and the fifty dollars paid them, but plaintiffs refused the demand, whereupon defendant left the horse with plaintiffs.

The court sustained the motion to strike, refused to allow the two amendments, and directed a verdict for the plaintiffs for the amount sued for. The defendant excepted to these rulings.

1. The answer filed by the defendant amounted to a plea of failure of consideration; but he will not be heard to set up that

defense, as he expressly waived any such right that he may other-wise have had when he signed the note containing the agreement that "it is expressly understood that the said Rountree and McAfee do not warrant the health or soundness of said animal." It has been held by this court that where, pending negotiations for the purchase of personal property, the seller knowingly makes false representations of its quality and character, and the negotiations finally result in an express agreement whereby the purchaser under-takes to buy the "property entirely upon his own judgment, waiving all defects, either patent or latent," as well as the implied warranty upon the part of the seller "that he knows of no latent defects undisclosed," the purchaser will not be heard to set up, as a defense to an action on the contract, that he did not purchase on his own judgment but on the false and fraudulent statements of the seller, "made pending the negotiations which led up to the sale." *Floyd* v. *Woods,* 110 *Ga.* 850 (36 S. E. 225); *Equitable Mfg. Co.* v. *Biggers,* 121 *Ga.* 381 (49 S. E. 271); *Walton Guano Co.* v. *Copelan,* 112 *Ga.* 319 (37 S. E. 411, 52 L. R. A. 268). The court did not err in striking the original answer of the defendant.

2. In his first amendment to the original answer the defendant alleges that the note sued on was procured by fraud, in that the plaintiffs made certain representations with respect to the sound-ness of the horse and his suitableness as a farm and buggy animal. But there is no allegation that the defendant was induced to sign the note by any trick or device, such as was pointed out in the cases cited in the *Copelan* case, supra; and in the absence of such averment, the defendant will not be heard to say that he purchased the horse on the fraudulent representation that the horse pur-chased was sound; for in the note he had voluntarily signed he had expressly waived any unsoundness in the horse. It does not appear in the answer of the defendant that the note he signed contained anything that he could not have seen or known by the exercise of the least diligence in reading it. If he had read the note (as he was bound to do, or be bound by it, unless, of course, there was some fraudulent representation as to the contents of the note, by which the defendant was deceived, or other circumstances suffici-ently excusing his failure to read it), he could have ascertained that the note contained a waiver of unsoundness, and he need not have signed it. The presumption is that he read the note and

knew what it contained; and having signed it, he is bound by its legal agreements. See *Case Machine Co.* v. *Broach,* 137 *Ga.* 602 (73 S. E. 1063); *McNeel* v. *Smith,* 106 *Ga.* 215 (32 S. E. 119).

3. According to the allegations of the second amendment of the defendant's answer, it does not appear that there was any consideration for the agreement subsequent to the signing of the note; and therefore it can not be enforced. The court did not err in striking this amendment on motion, in striking each of the answers and in directing a verdict for the plaintiffs.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*