FULENWIDER *v.* FULENWIDER.

No. 12957.   SEPTEMBER 14, 1939.
ADHERED TO ON REHEARING, OCTOBER 19, 1939.

*Hitch, Denmark & Lovett,* for plaintiff in error.

*A. Leopold Alexander* and *Oliver & Oliver,* contra.

JENKINS, Justice. ■■ The first two headnotes need no elaboration, except as to the contentions of the husband indicated in the subdivisions of headnote 2.

(*a*) The first contention is that the husband was relieved from complying with the $50 condition for the wife's release of alimony claims, because the parties made a subsequent novation by which this provision of the original written separation contract was eliminated. This, he contends, arose from the wife's acceptance of

new terms, stated in two letters written by the husband's attorneys to the wife's attorney on the two days following the original contract, as set forth in the statement of facts. It is essential that a novation shall itself be supported by a valuable consideration. *Purser* v. *Rountree,* 142 *Ga.* 836 (3), 840 (83 S. E. 958); *Collier Estate* v. *Murray,* 145 *Ga.* 851 (90 S. E. 52); *Widincamp* v. *Patterson,* 33 *Ga. App.* 483 (4) (127 S. E. 158); *Wimberly* v. *Tanner,* 34 *Ga. App.* 313 (129 S. E. 306); *Anderson* v. *International Harvester Co.,* 27 *Ga. App.* 533, 534 (109 S. E. 417); Code, § 20-115. Assuming that the evidence demanded a finding that the wife agreed to all the terms stated in the letters, signed only by the husband's attorneys, and that the minds of the parties met on two controversial items, the disposition of furniture and the custody of the child, which counsel for the wife insist was never done, still some valuable consideration for the alleged novation must have been shown. While the letters appear on their face to give all concessions to the husband and to deprive the wife of the specific benefits accorded by the original contract, and thus not to afford to the wife any new benefit or to the husband any new injury, his counsel contend that the novation was not a nudum pactum, because the letters show that he surrendered a money claim against the wife. This is based on the following statement in the first letter of his attorneys: "Since [the husband and wife] separated, sometimes his daughter has been with her mother and sometimes with him. When the child was with the mother he paid a certain sum for the support of the child. This he recognizes as a just obligation of his, and he has been happy to assume it. When the child was with him, he paid, under protest, a certain sum to [the wife]. This he wishes returned." In the following statement in the last letter of his attorneys, referring to this latter payment, it is said: "He is perfectly willing to waive the money that he paid his wife while she was living with her parents when his child was with him." However, any such claim and waiver of money would not constitute a valuable consideration, (1) because, in the absence of any alleged fraud or duress, the payment to the wife, even though "under protest" as stated, being an executed gift or voluntary payment of money, would not have been recoverable; and (2) especially because the original contract expressly provided that " all  .  . personal property of each of the par-

ties hereto shall be and remain his or her sole and separate property free from all rights or claims of the other therein or thereto." Since the payment of money to the wife, as referred to, for the support of the child had been made before the execution of the original contract, the wife was protected from any claim for its recovery by the quoted clause in the original contract. Therefore, even if the husband in the subsequent first letter set up such a claim, and in the subsequent second letter waived it, his relinquishment gave to the wife nothing to which she was not already entitled.

The husband, however, contends that the question of lack of consideration for the novation is not available to the wife, because she had *executed* all of her obligations in the novation, even though the husband's obligations remained executory. There is a principle, supported by authorities which he cites, that if a promisor "chooses to execute the contract [lacking in consideration] by performance, there is nothing to hinder his doing so, and he can not turn around and seek to undo his voluntary act." See Sooy *v.* Winter, 188 Mo. App. 150 (175 S. W. 132, 134); Winningham *v.* Dyo (Tex. Civ. App.), 48 S. W. (2d) 600, 603; 13 C. J. 314, § 145. Whether or not such a rule might be applicable to a separation agreement such as is here involved, the wife was not seeking to "undo" anything which she might have voluntarily done under the original contract or alleged novation. Her prayers related to the executory provision of the contract relating to alimony, and the husband's non-performance of the condition for its release.

(*b*) Especial stress is laid by the husband on the doctrine of equitable estoppel, or estoppel in pais, as precluding the wife from asserting or claiming that the husband had failed to comply with the money condition for the alimony release. It is strongly and ably contended, that, since the wife agreed to the suggestion by the husband's attorneys in their first letter, that "there is to be no payment of the $50 outlined in the agreement of January 5th," she thereby lulled the husband into the belief to his injury that this payment would not be insisted on, and that for this reason the money was not paid. Assuming that this statement and the related facts were such as might have constituted an estoppel against the wife, the right to rely on such a defense would depend upon the legal rules relating thereto. "The general rule is that estoppel,

864

to be available as a defense, must be pleaded and proved by the party relying thereon." *Hartsfield Loan & Savings Co.* v. *Garner,* 184 *Ga.* 283 (2) (191 S. E. 119), and cit. "Yet there are well-recognized exceptions to this general rule. . . If the elements and facts of an estoppel are set out," it is not necessary that the pleader should have used the word, "estoppel." *Rieves* v. *Smith,* 184 *Ga.* 657, 664 (192 S. E. 372); *Broderick* v. *Reid,* 164 *Ga.* 474 (3) (139 S. E. 18). The husband contends, that, although he did not use the word "estoppel," he "set forth in his answer all the facts that constitute the estoppel," and that "the legal conclusion of an estoppel necessarily follows." However, an examination of the entire pleadings and the bill of exceptions clearly shows that the sole reliance in the averments of the petition was on the alleged novation *as a contract,* the allegations concluding: "The resulting agreement entered into between the parties, acting by and with the consent of their attorneys, and ratified by the acts and conduct of the parties, your defendant stands ready and willing to perform." The petition prayed that "this honorable court determine the true agreement between the parties and ratify and enforce the same by appropriate decree," award the custody of the child to the husband, and "make proper allowance only for the support of defendant's minor child;" and the bill of exceptions makes no reference to any estoppel or facts that might constitute an estoppel.

Error was assigned on the award of alimony, because the court erred "in holding void and legally unenforceable the contract entered into by and between plaintiff and defendant, and dated the 5th day of January, 1939, as modified, offered as evidence in the case;" and because the court erred "in awarding alimony in any amount," as the wife "was barred from such a recovery by the *contract* she executed, offered and received in evidence, and which had not been in any manner repudiated by [the husband]." Nowhere did the husband set up an estoppel, either expressly or by any averment of facts necessary to constitute an estoppel, since he did not allege that the wife misled him, that he relied on what she did, and that by such reliance he had acted or failed to act to his injury. The omission of these necessary allegations precluded any claim of estoppel. In *Delaware Insurance Co.* v. *Pennsylvania Fire Insurance Co.,* 126 *Ga.* 380 (8), 384, 393 (55 S. E. 330, 7

Ann. Cas. 1134), there was an equitable petition to reform and enforce a written contract of insurance. It was alleged merely that, if it had been claimed that the contract had expired, the other party "would have been informed of the claim, and could have either caused the contract of insurance to be duly corrected, or, in case of dispute or delay concerning it, could have protected itself by other insurance." This court held that such "a plea of estoppel in pais, which did not allege that the defendant had misled the plaintiff, or that the latter had relied on any representation or conduct on the part of the former, and had changed its status or done or omitted to do anything by reason of such representations or conduct," was insufficient. For similar reasons, the failure of the husband in this case to plead these essential elements of an estoppel prevents him from now setting up such a claim, which was not made in the trial court or in the bill of exceptions, but was made only at a late stage of the case in this court. Although, as was held in the *Rieves* case, supra, a plaintiff may be relieved from the duty of pleading an estoppel relied upon merely "to defeat a defense raised by the defendant in his answer," there is no principle of law which would relieve a defendant from pleading an estoppel either expressly or by essential facts constituting an estoppel, merely because he may not have anticipated that the defense actually pleaded would be resisted and decided adversely. to him. In this case, if he desired to rely on an estoppel it was. his duty to plead, not only the defense of a novation, as he did, but that the acts of the wife in connection therewith. were relied upon by him to his injury. This he failed to do.

■ As to headnote 3, the Code, § 53-508, provides that the husband shall not be liable for necessaries furnished to the wife when separated from him, if she "shall be living in adultery with another man," or if she shall "voluntarily abandon him without sufficient provocation." Under § 30-210, "permanent alimony shall be granted," not only "in cases of divorce," but "in cases of *voluntary separation*," as well as "where the wife, against her will, shall either be abandoned or driven off by her husband." Section 30-205 declares that "on application for temporary alimony the merits of the cause are not in issue, though the judge, in fixing the amount of alimony, may inquire into the cause and circumstances of the separation rendering the alimony necessary, and in his discretion

may refuse it altogether." See *Gaulding* v. *Gaulding,* 184 *Ga.* 689, 690 (192 S. E. 724), and cit.; *Dicken* v. *Dicken,* 38 *Ga.* 663. Section 30-213 permits suits for temporary alimony "when husband and wife shall be living separate, or shall be bona fide in a state of separation, and there shall be no action for divorce pending." Construing these statutes in pari materia, "the mere fact of separation (*not mutually voluntary*), regardless of its cause or the surrounding circumstances," will not alone be sufficient to entitle the wife to temporary alimony. *Sikes* v. *Sikes,* 143 *Ga.* 314, 318 (85 S. E. 193). The statement in *Glass* v. *Wynn,* 76 *Ga.* 319 (2) that the wife could proceed for alimony, without a divorce, if the husband and wife are merely "living separately, or . . *bona fide* in a state of separation, . . and *it is immaterial what brought about this separation*"—whether or not a dictum—has been overruled or nullified by the decision in *Coley* v. *Coley,* 128 *Ga.* 654 (2) (58 S. E. 205), that the power of the judge, under the Code, § 30-205, to examine the circumstances of the separation and refuse all alimony was applicable to such a case of *mere separation;* that "it is not an invariable or arbitrary rule that alimony must be awarded . . without regard to the circumstances of the case;" and that the judge, after such an inquiry, could refuse alimony altogether, if the evidence so warranted. In cases of mere separation, not by *mutual agreement,* the settled rule, by virtue of the Code, § 53-508, being that a husband is not "bound to support his wife if she abandons him without just cause" (*Fuller* v. *Fuller,* 108 *Ga.* 256 (4), 33 S. E. 865), a wife who so abandons her husband is not entitled to alimony. *Davis* v. *Davis,* 145 *Ga.* 56 (88 S. E. 566); *Brisendine* v. *Brisendine,* 152 *Ga.* 745 (3) (111 S. E. 22). If the evidence is conflicting, the award or refusal of temporary alimony is ordinarily left to the sound discretion of the trial judge. *Montgomery* v. *Montgomery,* 180 *Ga.* 120 (3) (177 S. E. 337); *Pearson* v. *Pearson,* 125 *Ga.* 132 (54 S. E. 194). And if the evidence shows without dispute that the wife voluntarily abandoned the husband without just cause, the mere fact of separation, although bona fide, will not be sufficient to authorize the grant of any alimony. *Hunsicker* v. *Hunsicker,* 170 *Ga.* 294 (152 S. E. 581); *Perkerson* v. *Perkerson,* 157 *Ga.* 589, 594 (122 S. E. 53); *Durham* v. *Durham,* 156 *Ga.* 454, 457 (119 S. E. 702); *Davis* v. *Davis,* supra. However, none of those

cases involved a *"voluntary separation,"* such as the Code, § 30-210, expressly provides shall be a ground for permanent alimony, independently of the other stated grounds—a divorce, or "where the wife, against her will, shall either be abandoned or driven off by her husband." Such a separation, when *"mutually voluntary,"* as expressed in *Sikes* v. *Sikes,* supra, was there recognized as an exception to the general rule. Likewise, in *Coley* v. *Coley,* supra, this court, in declining to follow the above-quoted language of *Glass* v. *Wynn,* supra, approved and followed the ruling in *Hawes* v. *Hawes,* 66 *Ga.* 142, 144. In the *Hawes* case it was held, that "where a husband and wife *agreed* that she should live at her sister's (*he living at a different place*), and that he would support her, it amounted to a *voluntary separation,* and that a petition for alimony" would lie under the Code, now § 30-213. No question was there considered as to who was at fault, or as to any of the facts or circumstances of the mutually *"voluntary separation."* (Italics in the quotations above are ours.)

Accordingly, where in this case the testimony of the parties was in accord that they had separated by a bona fide mutual agreement to live apart, the judge did not err in granting temporary alimony and attorney's fees, irrespective of whose fault caused the separation. And this is true without regard to whether the testimony for the wife was sufficient to show cruel treatment as a statutory ground of divorce, or sufficient to show that she had been "driven off" by the husband from the home before the agreed voluntary separation occurred. Any moral attack on the wife being expressly disclaimed, it is not necessary to consider what, if any, effect the living of a wife in adultery, under the exceptions stated in the Code, § 53-508, would have in a case of separation by bona fide mutual agreement. The mutual agreement to separate sufficing to authorize the judge to grant alimony to the wife, as a sole basis for the exercise of his discretion, without going into any of the circumstances attending the agreed separation, it is unnecessary to go further and decide whether in all mutually voluntary-separation cases, when the husband is able to pay, the wife would be entitled to temporary alimony, not as a matter of discretion, but as a matter of absolute legal right, regardless of her conduct preceding the agreed separation. Both parties having agreed that the allowance for an attorney's fee was reasonable, and there being

evidence that the husband owned enough property to pay this fee and the award for alimony, the order shows no abuse of discretion in the amounts allowed.

■. But even if, in such a case of voluntary separation by mutual agreement of the parties, it were necessary for the wife to show that cruel treatment (Code, § 30-104) or some other sufficient legal ground for divorce existed, or else to show that she had been "abandoned or driven off by her husband" (§ 30-210), before the separation, the testimony of the wife, although disputed, was sufficient to authorize a finding that such cruel treatment existed, and that she had been "driven off" by the command of the husband to leave the home and by her fear to remain.

*Judgment affirmed. All the Justices concur.*

---

## AMENDMENT OF RULE 50

On September 11, 1939, it was ordered that Rule 50 of this court be amended by adding thereto the following:

The verity of such exceptions pendente lite shall be determined by the record, and no formal certificate by the Court of Appeals or by any Judge thereof shall be required.