MARY J. SHORTER *et al.*, plaintiffs in error, *vs.* JAMES A. P. METHVIN, for use, defendant in error.

1. When a deed recited that the grantor had years before made his will, giving certain property to his daughter's husband for the sole use of said daughter and her children, the property to be under the control of the husband, to be managed by him for the maintenance of his wife and family, without liability on his part to account, and that the property had gone into and continued in the possession of the husband, on the terms stated, for over twenty years, by parol agreement, and that the donor now desired, in writing, to carry out the original intent, the deed then, in terms, simply conveyed the property to the husband, as trustee, for the sole use of the wife and her husband:

*Held*, that taking the recitals in the deed as a part thereof, the husband was to control the property for the maintenance of his wife and children, free from a liability to account.

2. A conveyance by an insolvent husband to his wife in payment of a debt, claimed by him to be due to her from him for his use of her separate estate, will be closely scanned, and unless clearly *bona fide*, will be declared void as against existing creditors.

3. When a husband was the trustee of property for the separate use of his wife and children, but he was made the manager thereof for their support and maintenance, without liability to account, and he being largely in debt, recognized himself as indebted to his wife and children for the rent of the trust plantation for three years, and conveyed to himself, as their trustee, under the direction of the ordinary, certain property in payment of said debt:

*Held*, that as, under a proper construction of the trust deed, he was to manage the estate for the maintenance of his family without liability to account, no debt existed from him as trustee, unless there was proof that he had failed to give them reasonable maintenance.

Trusts.    Debtor and creditor.    Husband and wife.    Before Judge STROZER.    Quitman Superior Court.    November Term, 1873.

At the May term, 1872, of Quitman superior court, James A. P. Methvin recovered a judgment against John Gill Shorter as principal, and William Harrison and Theodore L. Guerry, as executors of James Harrison, deceased, as security, for $2,112 00, besides interest.    On March 15th, 1873, this execution was transferred to William Harrison, trustee, for a valuable consideration.    On August 2d, 1873, it was levied

on certain personalty as the property of Shorter. A claim was interposed by Mary J. Shorter and Mary Shorter Perkins. The issue thus formed was submitted to the decision of the court, without the intervention of a jury. The evidence made this case:

On December 4th, 1867, Cullen Battle, the father of Mary J. Shorter and grandfather of Mary Shorter Perkins, and John Gill Shorter, executed the following instrument:

"STATE OF ALABAMA—BARBOUR COUNTY:

"This indenture, made this the 4th day December, 1867, between Cullen Battle, of the county of Macon and state aforesaid, of the one part, and John Gill Shorter, trustee, of the county of Barbour and state aforesaid, of the other part: Witnesseth, that whereas, in consideration of the natural love and affection which I have and bear to my daughter, Mary Jane Shorter, I did, on her intermarriage with the said John Gill Shorter, in the early part of the year 1843, put her said husband in the exclusive and peaceable possession of the lands hereinafter described, whereof I was then seized in fee simple as owner, located in Randolph (now Quitman,) county, in the state of Georgia, intending and declaring that I would give the said lands to my said daughter, and provide the terms of the gift in my will; and whereas, in pursuance of said intention, I did, by will, which I kept on hand in case of my death, devise the said lands to my said daughter, Mary Jane Shorter, and her child or children as patrimony, intending to secure the right and title in and to the said lands to and for the use and benefit of my said daughter, Mary Jane Shorter, and her child or children, without power of alienation or incumbrance by her said husband, though desiring and intending that he should manage and control the same without liability to account for the rents and profits thereof; and whereas, with a knowledge of said intention and purpose on my part, and of the provisions of my will in accordance therewith, the possession and use of said lands have continued uninterrupted with my said daughter, Mary Jane Shorter, under claim of title

thereto by her, under the provision of my said will, with the knowledge and assent of her said husband, and under the management and control of her said husband for over thirty years, and down to the present day; and whereas, under the said possession and claim of title thereto, under the said provisions of my will, and with my knowledge, approbation and consent, large portions of said lands have been ditched and cleared, and the value thereof greatly enhanced by many other permanent and valuable improvements made during the past twenty years; and whereas, these facts have, in law, created against me a perfect right in equity in behalf of my said daughter, Mary Jane Shorter, and her child or children, to the exclusive and continued possession, use and enjoyment of the said lands; and whereas, it is my desire, as it is in accordance with my declared purpose, expressed in my said will, to secure the said lands to and for the use and benefit of my said daughter, and her child or children, as hereinbefore stated: Now, in consideration of the premises, and the sum of $5 00 to me in hand paid by said John Gill Shorter, trustee, the receipt whereof is hereby acknowledged, I, the said Cullen Battle, have bargained, sold and conveyed, and by these presents do bargain, sell and convey unto him, the said John Gill Shorter, as trustee, the following described lands in the county of Quitman and state of Georgia, to-wit: Lots numbers three hundred and two, three hundred and seven, three hundred and eight, three hundred and thirty-three, three hundred and thirty-eight, three hundred and sixty-five, and fractional lots three hundred and seventy and three hundred and seventy-one, containing about one thousand two hundred and fifty acres, more or less; to have and to hold unto him, the said John Gill Shorter, trustee, his successors and assigns, as hereinafter provided, the said bargained lands, with all the rights, tenements and hereditaments thereunto belonging, or in any manner appertaining, forever in fee simple. Nevertheless, this conveyance is in trust, and upon condition that the said John Gill Shorter, as trustee, shall hold, manage and control the said lands herein mentioned

for the use and benefit of my said daughter, Mary Jane Shorter, and her child or children, without power of alienation by him as trustee, and without any right or power of incumbrance by him, and exempt from all debts or liabilities by him contracted, in any manner or form whatever; provided, that should it be needful to make sale of said lands at any time hereafter for the better advancement of the trust herein admitted and declared, the same may be sold by a decree of a court of chancery.

"*In testimony whereof*, I, Cullen Battle, the grantor, and I, John Gill Shorter, as an acceptance of the trust herein recited, have hereunto set my hand and affixed my seal the day and year above written.

"C. BATTLE,            [SEAL.]

"JOHN GILL SHORTER, [SEAL.]

"Signed, sealed and delivered in

    presence of:

"JOHN M. McKLEROY,

"WILLIAM H. THORNTON."

This deed was properly probated and recorded in the clerk's office of the superior court of Quitman county, Georgia, on the 25th day of January, 1868.

On February 16th, 1871, Shorter, being in an insolvent condition, procured the services of two disinterested and experienced gentlemen to estimate the value of the rent of the property described in the aforesaid deed, for the years 1868, 1869 and 1870. They estimated it as being worth $2,000 00 per annum. Shorter then charged himself, as trustee, with $6,420 00, adding to the rent the interest on the same to 1st of January, 1871. He procured these gentlemen to value certain personalty, embracing that levied on, then on the aforesaid plantation. This was estimated as being worth $6,420, the amount due for rent, as aforesaid. He then credited himself, as trustee, with such personalty, thus making a balance.

On October 28th, 1871, he made a return of his actings and doings as trustee to the ordinary of Quitman county, setting

out in detail the aforesaid transaction. This return was examined and approved by the ordinary on November 29th, 1871.

The debt, which was the basis of the execution aforesaid, was contracted prior to the transfer aforesaid.

The court held the property subject, and ordered the execution to proceed. The claimants moved for a new trial upon the following grounds, among others:

1st. Because the court erred in holding that under the aforesaid trust deed of December 4th, 1867, there was no liability on the part of Shorter to account for the rents, issues and profits of the estate.

2d. Because the court erred in holding that the transfer of the aforesaid personalty, in satisfaction of Shorter's liability for rents, issues and profits, was without consideration and void.

3d. Because the court held that Shorter's acknowledgment of liability was without consideration and void.

The motion was overruled, and claimants excepted.

A. HOOD; LYON & JACKSON, for plaintiffs in error.

JOHN T. CLARKE, for defendant.

McCAY, Judge.

1. It would hardly admit of question, if this were a proceeding directly against the trustee in this deed, to compel him to account, that under a proper construction of it, according to the settled rules, he would be held not liable. The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of a deed together, and to consider this with the surrounding circumstances. In Parkhurst *vs.* Smith, Willes' Reports, 332, it is said too much regard is not to be had to the natural and

proper signification of words and sentences, for the law doth often transpose words contrary to their order, to bring them to the intent of the parties. Here the intent is stated in terms. The object and purport of the deed is to carry into effect a long cherished purpose of the donor, which he had long since reduced to writing, in his will, and which he had acted on years ago, by delivering the property to Mrs. Shorter, on the express terms set forth in that will. There is no hint in the deed of any change of that purpose; the will is referred to, its terms set out; the parol contract made at the time of the original delivery is alluded to, and the express, declared purpose of this deed, on its face, is declared to be to commit to writing and execute as a deed, the long ago declared scheme. We can see no possible motive for alluding to the terms on which Mr. Shorter was to be the trustee, to-wit: without liability to account, unless the purpose of the donor was to make that also one of the terms of the deed. It would have been sufficient to say, simply, that the will and the parol agreement had made him trustee. Taking this whole deed and the surrounding circumstances together, to-wit: the will, the parol contract, the actual holding that had already taken place, we think this deed, though it creates a trust, exempts the trustee from liability to account. The donor conceived that Mr. Shorter would himself support his wife and children, and this trust, so far as the use of it was concerned, was for their support; beyond that he did not intend Mr. Shorter should be liable to account.

2, 3. Whilst the mode in which this sale of property by the trustee to himself is a very unusual one, yet did the fact, in truth, exist that he owed the debt to the trust estate. We are not prepared to say that the transfer of title from Mr. Shorter to Mr. Shorter, trustee, might not stand. But such a transaction is a suspicious one on its face, and ought to be closely scanned. As we construe the deed, the trustee, Mr. Shorter, was to have the use, control and profits of the property conveyed by it for the support of his family; beyond that he was not liable to account. Had it appeared that the fam-

ily did not get this support, there might be good grounds for insisting that he was in debt to them.    But no such thing appears.    After using the land as for many years he had used it, carrying on a planting business upon it, his family bearing the usual relations to him, he assumes that he owes them rent for the plantation, and proceeds to pay it by setting apart to himself, as trustee, certain of his own property for their use. He does this in payment of rent he assumes to owe them; he does not pretend that he had failed to support them, and was therefore due to them an amount for this failure.    The transfer of this personal property rests for its consideration solely upon the *rent* assumed to be due, and that rests solely upon whether he, as trustee, was liable to account beyond a support for the family.

As in our judgment, no rent was due, as he was under no liability to account, the transfer is not valid, that is as against his real creditors it is void.    It is a voluntary conveyance, and under the evidence in the record his condition as to solvency at the time was such as to justify the jury in finding the transfer void as against creditors.

Judgment affirmed.