### 13468.  TENNILLE BANKING CO. *v.* WARD.

1. The contract of one who draws a domestic bill of exchange is that if the drawee does not accept he will pay, and if the drawee does not pay after acceptance he will. After acceptance the contract of the drawer is one of suretyship.
(*a*) A surety cannot defeat liability by proving merely that he received no monetary consideration, but in order to sustain a plea of want of consideration he would have to show that his principal did not receive any consideration or benefit from the paper sued on.
2. The admission of the evidence complained of in the 1st and 2d grounds of the amendment to the motion for a new trial was error, because it was in parol and contradicted the absolute and unqualified promise of the defendant to pay a given sum of money where there was a " specific consideration actually agreed on and expressed in writing."
(*a*) The admission of the evidence complained of in the 2d ground was error for the additional reason that it was not shown that McMaster, the president of the plaintiff bank, had authority to bind the bank by stating to the defendant that he was not liable on the paper sued upon.
3. The court erred in charging the jury as complained of in the motion for a new trial.

DECIDED FEBRUARY 20, 1923.

Complaint; from city court of Sandersville — Judge Goodwin. March 21, 1922.

This was a suit upon a " trade acceptance " or " inland bill of exchange," which was as follows: " Trade Acceptance. Tennille, Ga., Jan. 29, 1921. On March 1st, 1921, I promise to pay to the order of myself four thousand six hundred ninety-nine and 97/100 dollars — 40 B/C inv. Dixie Cotton Co. . . The obligation of the acceptor of this bill arises out of the purchase of goods from the drawer. [Signed] J. J. Ward. To Tennille Yarn Mills, Tennille, Ga." Written across the face of the bill. " Accepted, Jan. 29, 1921. Payable Tennille Banking Co., Payable March 1st, 1921. [Signed] Tennille Yarn Mills, L. J. Ward, Cashier." Indorsed on back: " J. J. Ward." J. J. Ward was sued as maker and indorser. He filed a plea denying any indebtedness to the plaintiff, and specially pleaded as follows: " 2. For further answer this defendant shows that the acceptance, a copy of which is attached to plaintiff's petition, was not the obligation of this defendant, but is the obligation of the Tennille Yarn Mills, and that this defendant is in no way liable thereon, for the following reasons: Because at the time the trade acceptance was accepted . . said bank relied upon and accepted the draft on the Tennille Yarn Mills, and that the credit was extended to the Tennille Yarn Mills and not to this defendant, and this defendant has in no way profited by it, but that he drew the same at the instance and suggestion of the said bank with the understanding that he was not to be subjected to any liability thereon, and that he was merely an accommodating indorser, all of which was known to the bank at the time." " 3. For further answer this defendant shows that the bank took possession of the cotton which was the basis of said draft, and converted it to its own use without consulting this defendant and without any authority from him." The plaintiff moved to strike paragraph 2 of the plea, and upon said motion being overruled he filed exceptions pendente lite. Upon the trial of the case the jury returned a verdict for the defendant, and the plaintiff filed a motion for a new trial. The 1st and 2d grounds of the amendment to the motion for a new trial allege that the court erred in admitting the following evidence: 1. " Mr. Arnall, cashier at that time, who is now dead, had a conference with my father, the defendant, Mr. Holmes, president of the mill, and

myself being present.   He stated that the banking law required that the papers of the Tennille Yarn Mills should be in different form, and that the Federal Reserve Bank or the State Banking Department wanted trade acceptances of the kind and character sued on in this case, rather than a paper we had been accustomed to use.   It was distinctly understood by Mr. Arnall, between Mr. Arnall and my father, that my father was not to be liable on the original trade acceptance or on any future trade acceptances of the mill.   He was only doing this to accommodate the mill and Mr. Arnall, and to put the acceptance in the form desired.   It was understood and agreed that my father should not be liable on any of these papers.   This conversation related to the original trade acceptance and not to the one sued on in this case." 2.   "Dr. McMaster (the president of the bank) and I had a conversation in the rear of his drug-store in which he also stated that it was a way of beating the devil about the bush, and that my father was not liable on this trade acceptance as drawer or indorser."

The motion for a new trial was overruled, and the plaintiff excepted.

*E. W. Jordan,* for plaintiff.   *Evans & Evans,* for defendant.

BLOODWORTH, J.   (After stating the foregoing facts.)

1.   The trade acceptance or inland bill of exchange sued upon shows affirmatively that it was *accepted* by the drawee (the Tennille Yarn Mills), and therefore the contract of the defendant (the drawer) was one of *suretyship.*   The case of *Bank of Richland* v. *Nicholson,* 120 *Ga.* 622 (48 S. E. 240), which was a suit upon an inland bill of exchange, is authority for this statement.   It was held in that case that "The contract of the drawer is that if the drawee does not accept he will pay, and that if the drawee does not pay after acceptance he will.   See, in this connection, *Manry* v. *Waxelbaum,* 108 *Ga.* 14 (33 S. E. 701).   *After acceptance* the contract of the drawer is one of *suretyship* (*Davis* v. *Baker,* 71 *Ga.* 33), and between the drawing and the acceptance it is one in the nature of suretyship."   (Italics ours.)   See, in this connection, *Preston* v. *Dozier,* 135 *Ga.* 25 (68 S. E. 793).   Thus, the defendant, if liable at all, was liable as a *surety;* and, under the ruling of this court in *Watkins Medicine Co.* v. *Marbach,* 20 *Ga. App.* 694 (93 S. E. 270), he cannot defeat such liability by merely proving that *he* received no monetary consideration, but in order

to sustain a plea of want of consideration, he would have to show that his *principal* (the drawee) did not receive any consideration or benefit from the paper sued on. In that case the court said: "Section 3538 of the Civil Code of 1910 is as follows: 'The contract of suretyship is that whereby one obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor.' It appears from the face of the contract signed by the alleged sureties in the instant case that the consideration to the sureties was 'one dollar' and 'the execution of the foregoing agreement [the contract signed by the Medical Company and Marbach] by said company, and the sale and delivery by it to the party of the second part of its medicines, extracts, and other articles, and the extension of the time of payment of the indebtedness due from him to said company as therein provided.' Under the code-section quoted above, and the rulings of the Supreme Court and of this court, one important distinction between a contract of guaranty and one of suretyship seems to be that in the former the benefits given under the contract must flow to the guarantors, and in the latter they must flow to the principal. This code section and the court decisions bearing upon the subject must, however, be given a reasonable and not an unreasonable construction. Section 3540 of the Civil Code of 1910 declares that 'the contract of suretyship is one of strict law, and his liability will not be extended by implication or interpretation.' It is clear to us that the word 'benefit,' as used in section 3538, means some real and substantial, and not a mere nominal benefit. On the face of the contract in the instant case, only an insignificant, nominal benefit, to wit one dollar, flowed to the alleged sureties, while all of the real, important, and substantial benefits were given to the principal. Probably the most important of these benefits to the principal was the extension to him by the Medical Company of the time of payment of the debt, then due by him, amounting to over $1200. The contract, when construed as a whole, clearly shows that the defendants who signed as sureties obligated themselves to pay the debt of their principal, Marbach, in consideration of the extension to him of the time of payment of this large debt, and of the other important benefits

given him under the contract, and that these indulgences, granted to the principal, were the real consideration of their signing as sureties, and not the merely nominal, inconsequential amount of fifty cents apiece, which the contract says they received." See *Smith v. Hightower,* 3 *Ga. App.* 197 (59 S. E. 593) ; *Johnson* v. *Cobb,* 100 *Ga.* 139 (28 S. E. 72).

2. Conceding, but not deciding (the exceptions pendente lite not being argued by the plaintiff in error), that the foregoing plea was good as a plea of failure or want of consideration, we are still of the opinion that the admission of the evidence complained of in the 1st and 2d grounds of the motion for a new trial was error, because it was in parol and contradicted the absolute and unqualified promise of the defendant to pay a given sum of money where there was " a specific consideration actually agreed on and expressed in the writing." In *Sasser* v. *McGovern,* 11 *Ga. App.* 88 (74 S. E. 797), Judge Pottle, speaking for this court, said: " Reduced to its last analysis, the effort of the defendant in this case is to defeat a plain, unconditional promise to pay, by proof of an oral contemporaneous agreement to the effect that he had really never made any promise to pay. If at the time the note was executed the bank had entered into a written stipulation agreeing not to sue the defendant upon the note, and in effect releasing him from liability thereon, such an agreement would have been valid and binding. *Marlin* v. *Monroe,* 107 *Ga.* 330 (33 S. E. 621). But we know of no principle, nor has any decision been called to our attention, which supports the proposition that a written promise may be defeated by proof of an oral agreement not to enforce it. The decisions are directly to the contrary. See *Mansfield* v. *Barber,* 59 *Ga.* 851; *Johnson* v. *Cobb,* 100 *Ga.* 139 (28 S. E. 72)." See *Hirsch* v. *Oliver,* 91 *Ga.* 554 (2) (18 S. E. 354) ; *Bullard* v. *Brewer,* 118 *Ga.* 918, 920 (45 S. E. 711), and cit.; *Watkins* v. *Woodbery,* 24 *Ga. App.* 80, 83 (100 S. E. 34) ; *Sikes* v. *Payton,* 23 *Ga. App.* 721. (99 S. E. 310). The court evidently admitted the evidence set out in these grounds of the motion upon the idea that one may always inquire into the consideration of a written instrument, and that proof of what the consideration in fact was does not have the effect of varying an unconditional contract in writing. However, the evidence the admission of which is complained of was altogether insufficient to show a want of considera-

tion, and therefore was not admissible, because of the above axiomatic rule. The admission of the evidence complained of in the 2d ground was error for the additional reason that it was not shown that McMaster, president of the plaintiff bank, had authority to bind the bank by stating to the defendant that he was not liable on the paper sued upon. This alleged statement was made in a conversation between McMaster and the defendant *after* the transaction with the bank was ended, and the transaction was not had with McMaster as agent of the bank, but with the cashier, Arnall. See, in this connection, Civil Code (1910), §§ 3606, 5799; *National Bldg. Asso.* v. *Quinn*, 120 *Ga.* 358 (2) (47 S. E. 962). Moreover, the record in this case shows that the evidence objected to "related to the original trade acceptance and not to the one sued on in this case."

3. The court erred also in charging the jury, as complained of in the motion for a new trial, that if the defendant notified the plaintiff to sell the collateral, and the plaintiff failed to comply with such instruction and failed to sell the collateral, then the plaintiff would be liable for damages, and the jury, if they found that the cotton had declined on the market after notice was given, should charge the plaintiff with the decline; and further that if, at the time of the notice to sell, the cotton would have been sufficient to pay the note or the balance due thereon, and the plaintiff failed to sell, the plaintiff could not recover. This charge was error, because the pleadings did not authorize these instructions. The defendant's plea set up merely that the plaintiff sold the cotton wrongfully and converted it to his own use, without consulting the defendant, and the plea nowhere claimed damages of any character.

It follows, from what has been said, that the judgment of the lower court overruling the motion for a new trial should be

　　　　*Reversed. Broyles, C. J., and Luke, J., concur.*