## · 15836. BRIDGES *v.* HOME GUANO COMPANY.

Considering it as a whole, the instrument relied on in the present action as embracing an enforceable agreement by the defendant for the sale of goods described therein was not fatally defective as such a contract because of the proviso which follows the semicolon in the stipulation here quoted: "In case of destruction of our mills, in whole or in part, or stoppage by strikes or other causes, we reserve the right to cancel all or any part of this contract; and the company reserves the right to ship all or any part of this contract as they may deem expedient;" but the right of the defendant to ship only such part of the goods as it deemed expedient was dependent upon the existence of one of the conditions expressed in the stipulation, proof of which would be a matter of defense.

DECIDED DECEMBER 17, 1924.

Action for breach of contract; from city court of Bainbridge— Judge Spooner. July 29, 1924.

R. L. Z. Bridges brought an action for damages against Home Guano Company, for the breach of an alleged contract for the sale and delivery of twenty tons of fertilizer. A copy of the writing

upon which the plaintiff relied as constituting the contract was annexed to the petition, and was as follows:

"The Home Guano Company.

"Dothan, Ala., Feby. 24, 1922.

"To R. L. Z. Bridges, Brinson, Ga.

"Dear Sir: We have this day agreed to ship to you, subject to the acceptance of the company, from Dothan office [variously described brands and grades of fertilizers aggregating twenty tons, at stated prices, to be paid for on May 1, 1922]. These goods are to be delivered f. o. b. cars at Brinson, Ga., at above prices ($1 per ton for drayage will be charged on all lots less than car lots), and are to be taken before June 1st next.

"The company's guaranty applies only to chemical composition of the goods, as expressed in guaranty printed on bags and filed with the different State departments. Purchaser may demand customer to weigh fertilizers at his depot, otherwise company will not be responsible for any difference in weights. Customer agrees that he or his agent will not claim that fertilizers were not branded and tagged in accordance to law, should he fail to notify company of such fact upon arrival and before removal of said fertilizers, also agrees that ownership of all unsold or undelivered goods remain with the company and is subject to its order. Customer must get consent of company before using any of these fertilizers shipped him under this contract. This contract not subject to cancellation without company's consent.

"For all goods shipped, customer is to give his or their notes at above-named prices on company's regular form not later than May 1st next, or customer's account or indebtedness shall become due and payable at once at the option of the company payable in cash, and it is further agreed to pay a reasonable attorney's fee on said note or notes if process of suit is necessary. And you further agree to secure your note or notes by pledging and lodging with said company as collateral security not later than June 30th next (or this account becomes payable at once) all notes of purchasers from you of the goods of this company which customer absolutely guarantees, and if company requires it, all such notes or mortgages, open account, or other record of each sale shall be endorsed by customer and delivered to company; and you bind yourself to hold such notes, mortgages, open accounts, or other records of such sales for collec-

tion and subject to order of the company, and the accounts until the notes are taken, also the goods on hand, in trust for said company, and will sign and return to company their regular trust receipt covering said notes, mortgages, open accounts, or other records of sales until all your indebtedness is paid on your account or notes to said company; remitting the money on these collateral notes and accounts as fast as collected, and all money collected shall be kept subject to company's order. You agree to pay said company at once for any portion of these goods you may sell for cash. Customer agrees that all expenses to collect notes or accounts of purchasers of said fertilizers shall be borne by customer. Upon failure of customer to comply with any of the agreements herein, said account or notes of customer, either or both, shall become at once due and payable at the option of the company.

"We reserve the right to cancel this contract in case of any occurrence that we may regard as unfavorable to your credit. We are not responsible except for definite engagements for delays in transportation. In case of destruction of our mills, in whole or in part, or stoppage by strikes or other causes, we reserve the right to cancel all or any part of this contract; and the company reserves the right to ship all or any part of this contract as they may deem expedient.

"It is mutually agreed that the terms, conditions, and prices stated herein are in no way to be affected by any other contract customer or company may make, and that no verbal or written statement between customer and company's salesman shall be binding on the company, unless confirmed and authorized by letter signed by the general manager of the company and it shall become a part of this contract.

"The Home Guano Company,

"By N. R. Graham, Salesman."

"The Home Guano Company, Dothan, Ala.

"Dear Sir: We or I hereby accept this contract upon the terms and conditions stated therein.

(Signed in duplicate.)

"R. L. Z. Bridges, Customer.

"Approved: M. L. Hanahan, Treas. & General Manager."

The defendant made an oral motion to dismiss the declaration, which the court sustained, rendering the following judgment: "It

appearing to the court that the contract sued upon contains the following clause, to wit: 'the company reserves the right to ship all or any part of the contract as they may deem expedient,' and the court being of the opinion that the plaintiff has no cause of action against the defendant because of said clause contained in the contract sued upon, it is hereby ordered and adjudged that the declaration be and the same hereby is dismissed upon motion of defendant." The plaintiff excepted.

*Harrell & Cusler,* for plaintiff.

*Hartsfield & Conger,* for defendant.

BELL, J. If the petition, for any other reason than that mentioned in the judgment of dismissal, had failed to set forth a cause of action, we possibly should affirm the judgment, even though we disagreed with the learned trial judge in the ground upon which the dismissal was based; but since counsel for both parties have devoted their arguments mainly to the point upon which the court below disposed of the matter, and since we are satisfied that whether the plaintiff was entitled to recover all of the damages for which he sued, his petition was good for a recovery of at least a part of the same, and, therefore, not subject to be stricken in its entirety (*Port Wentworth Terminal Corporation* v. *Leavitt,* 24 *Ga. App.* 650 (1), 101 S. E. 766), unless it was fatally defective for the reason just indicated, we will limit this opinion to a consideration of that question alone.

The clause which was held by the trial court to be fatal to the writing as an enforceable undertaking on the part of the defendant was as follows: "In case of destruction of our mills, in whole or in part, or stoppage by strikes or other causes, we reserve the right to cancel all or any part of this contract; and the company reserves the right to ship all or any part of this contract as they may deem expedient." Notice the semicolon. It is insisted, in effect, by the defendant that the clause following that mark of punctuation is to be considered independently of the preceding part of the sentence, and thus as attaching an unconditional reservation of the right to ship only such part of the fertilizers as it might deem expedient. On the other hand, it is contended by the plaintiff that this clause was limited by the language of the preceding clause, and reserved to the defendant the right to determine the quantity of fertilizers it would ship under the agreement, only in the event of the destruc-

tion in whole or in part of its mills, or of "stoppage by strikes or other causes."

The writing itself would indicate that if a contract exists, the defendant was the party who proposed it, since it is in the form of a letter addressed to the plaintiff by one of the defendant's sales-men, with the plaintiff's acceptance and the defendant's approval subsequently entered thereon. *Buick Motor Co.* v. *Thompson,* 138 *Ga.* 282 (75 S. E. 354). It is a well-settled rule that in the construction of a contract it is to be considered as a whole, and that no part of it is to be discarded if it can be avoided. "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." Civil Code (1910), § 4268 (4). If a contract is so framed as to be susceptible of two constructions, that interpretation which is least favorable to the author or party proposing it should generally be accepted. *Candler Investment Co.* v. *Cox,* 4 *Ga. App.* 763 (1) (62 S. E. 479); *Ætna Insurance Co.* v. *Lipsitz,* 130 *Ga.* 170 (2) (60 S. E. 531, 14 Ann. Cas. 1070); *Moorefield* v. *Fidelity Mutual Life Ins. Co.,* 135 *Ga.* 186 (2) (69 S. E. 119). "When it is possible to do so without contravening any rule of law, the courts will construe a contract as binding on both the parties, where, from the language of the contract, the conduct of the parties, and all the attendant circumstances, it appears that the intention of the parties was that both should be bound by the sale, and substantial justice requires that the contract be given effect. Civil Code (1910), § 4268 (3); *Mill Wood & Coal Co.* v. *Flint River Cypress Co.,* 16 *Ga. App.* 636 (1), 637 (85 S. E. 943); *Mutual Life Ins. Co.* v. *Durden,* 9 *Ga. App.* 797 (3), 800 (69 S. E. 119)." *Good Roads Machinery Co.* v. *Neal,* 21 *Ga. App.* 160 (3) (93 S. E. 1018).

"The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Civil Code (1910), § 4266. Every other rule is subservient to this one. "The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover

the true intent of the parties, and in doing this we are to take the whole of [the instrument] together, and to consider this with the surrounding circumstances." *Shorter* v. *Methvin,* 52 *Ga.* 225 (1), 230. The rules of grammatical construction usually govern, but even these may be disregarded in order to effectuate the intention. So, also, "sentences and words may be transposed, and conjunctions substituted for each other." Civil Code (1910), § 4268 (5).

The instrument here under consideration begins with the statement: "We [the defendant] have this day agreed to ship to you [the plaintiff], subject to the acceptance of the company," twenty tons of fertilizer of various brands and grades at stated prices, to be paid for on a certain day named. Following these are sundry other provisions which it were idle to propose unless the defendant actually intended a contract of sale. Again, the right was reserved by the defendant to cancel the contract "in case of any occurrence" that it might regard as unfavorable to the plaintiff's credit. This clause would appear to be wholly unnecessary if the provision, "the company reserves the right to ship all or any part of this contract as they may deem expedient," established for it an avenue of escape from any obligation except to deliver such infinitesimal part of the goods as it might choose, in accordance with its own opinion of expediency. If this part of the instrument be given the effect which the defendant claims for it, it is sufficiently broad to render wholly superfluous the stipulation with respect to the cancellation of the agreement in the event of any happening that the defendant might have regarded as unfavorable to the plaintiff's credit.

We have already called attention to the punctuation. If in place of the semicolon in the sentence quoted at the beginning of this opinion there had been no mark at all, or if instead we had found a comma, we think it perfectly clear that the reservation of the right to ship all or any part of the goods, as the defendant might deem expedient, would have been subject to the conditions stated in the other part of the sentence. Shall we be persuaded to a contrary conclusion merely because of the semicolon, or more accurately, because of the *difference* between a comma and a semicolon? It might be possible for a case to arise in which all other considerations were evenly balanced and that the difference between these marks of punctuation might, like a feather's weight, turn the scale to one side rather than the other; but this is not a case of that

character. "The punctuation of an instrument may be considered when the meaning is doubtful, but it can not control if the meaning otherwise plainly appears. In order to arrive at the meaning of the parties, proper punctuation marks may be inserted by the court in construing the instrument." 17 Am. & Eng. Ency. Law 20; 13 C. J. 535, § 494 (b), and citations. In Holmes v. Phœnix Insurance Co., 98 Fed. 240 (2), 47 L. R. A. 308, the United States Circuit Court of Appeals said: "Punctuation is no part of the English language. The Supreme Court says that it 'is a most fallible guide by which to interpret a writing.' Ewing v. Burnet, 11 Pet. 41, 54 (9th L. ed. 624). The Century Dictionary tells us, what is common knowledge, that 'there is still much uncertainty and arbitrariness in punctuation.' It is always subordinate to the text, and is never allowed to control its meaning. The court will take the contract by its four corners, and determine its meaning from its language, and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly, without regard to the punctuation marks, or the want of them. The sense of a contract is gathered from its words and their relation to each other, and after that has been done, punctuation may be used to more readily point out the division in the sentences and parts of sentences. But the words control the punctuation marks, and not the punctuation marks the words." It is quite true that the meaning of isolated sentences may be changed most materially by a mere varying of the punctuation; but as each sentence of a contract must be studied in the light of all the others, so must its punctuation be subordinate to the effect of the whole instrument.

We think that the entire sentence under consideration, construed with reference to the other provisions of the writing, means substantially this: that in case of the destruction, either in whole or in part, of the defendant's mills, or in the event of stoppage by strikes or other causes, the defendant reserved the right to cancel "all or any part of this contract," and might exercise such right of cancellation according as it, and not others, might deem expedient; the latter portion of the sentence being inserted merely for the purpose of making clear that if either of the named conditions arose, the portion of the goods which the defendant might then supply, if it did not see fit to fill the contract in its entirety, was to be determined by the judgment alone of the defendant.

It is our opinion that the stipulation by which the defendant reserved the right to ship all or any part of the fertilizers is dependent upon the condition or conditions previously expressed in the same sentence, and that the existence of these conditions, or at least of one of them, would be a matter of defense.  *Buick Motor Co.* v. *Thompson,* supra.

*Judgment reversed.  Jenkins, P. J., and Stephens, J., concur.*