ARMOUR FERTILIZER WORKS *v.* MAXWELL *et al.*

No. 12389. SEPTEMBER 24, 1938. REHEARING DENIED OCTOBER 15, 1938.

*Dorsey Davis* and *Tolnas & Middlebrooks,* for plaintiff.
*George L. & Carter Goode* and *Webb & Hall,* for defendants.

JENKINS, Justice. 1. "Every conveyance of real or personal estate, by writing or otherwise, . . had or made with intention to delay or defraud creditors, and such intention known to the party taking," is "fraudulent in law against creditors, . . and as to them null and void." . . "A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." Code, § 28-201 (2). "Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance," is void as to creditors. § 28-201 (3). "When a transaction between husband and wife shall be attacked for fraud by the creditors of either, the onus shall be on the husband and wife to show that the transaction was fair." § 53-505; *Moore* v. *Loganville Mercantile Co.,* 184 *Ga.* 351 (2) (191 S. E. 121), and cit.; *Tucker* v. *Talmadge,* 186 *Ga.* 798 (199 S. E. —). As against creditors, transactions between husband and wife should be closely scanned, and the utmost good faith must be made to appear. *Rountree v. Lathrop,* 69 *Ga.* 757 (b); *Booher* v. *Worrill,* 57 *Ga.* 235, 238; *Shorter* v. *Methvin,* 52 *Ga.* 225 (2).

2. "If the wife shall have a separate estate, and shall purchase property from persons other than her husband, and the property shall be levied on as the property of the husband, the onus shall be upon the creditor to show fraud or that the wife did not have the means wherewith to purchase the property."

Code, § 53-505. "The consideration of a deed may always be inquired into when the principles of justice require it." § 29-101.

3. Giving application to the above principles of law, where it has been made to appear without dispute that a wife, with the consent of her husband and with his assistance as her agent, had acquired a separate estate, and from the proceeds of such separate estate had purchased two tracts of land from third persons, thereby acquiring title thereto in her own name, and that subsequently, in exchanging the two tracts of land for another and different tract owned by a different third person, the husband, acting in the transaction as agent for his wife, did without her knowledge or consent have the title of the property represented by the new deed, taken in the exchange, executed jointly to himself and his wife; and where it further appears that very shortly thereafter, and immediately upon her discovery that the title to the property taken in exchange had not been made to her alone but to her and her husband jointly, the wife protested to her husband, and, in response to such protest, received from him a quitclaim deed to the property taken in exchange, stating as its consideration the natural love and affection of the husband for the wife, the wife, upon showing without dispute the facts above set forth, could explain the true consideration of the quitclaim deed, and, upon so doing, was entitled as a matter of law to prevail in her claim to the property, as against a creditor of her husband. Consequently the court did not err in directing the verdict against the plaintiff in fi. fa., and in favor of the claimant wife.

*Judgment affirmed. All the Justices concur.*

### ON MOTION FOR REHEARING.

JENKINS, Justice. Plaintiff in fi. fa. contends that the court in its decision ignores and passes by the fact that the evidence shows that the two parcels of land deeded in exchange for the tract, a one-half interest in which is levied on as the property of claimant's husband, were purchased by claimant with money belonging to her husband, defendant in fi. fa. While plaintiff in fi. fa. levied on only a half interest in the land thus taken in exchange, and by an "amendment to its pleadings" set forth that the husband's quitclaim deed to his wife, dated December 27, 1928, to the half interest taken in the husband's name, was null and void against the plaintiff as a creditor, for the reason that it

was without consideration, and made while the defendant in fi. fa. was insolvent, and while the exceptions taken to the directed verdict in claimant's favor complain that claimant failed to show that this conveyance "was not a voluntary deed," and was made in good faith, and that the jury should have been permitted to determine whether it was made in good faith and for a valuable consideration, or was made to hinder, delay, and defraud the plaintiff in fi. fa., we nevertheless construed the pleadings and the evidence offered thereunder as an attack upon the bona fides of the two antecedent first-mentioned transfers, and did not fail to consider and to pass on the question whether the wife had previously acquired title in good faith to the two parcels of land which were deeded in exchange for the last-mentioned tract. The first of these two tracts was acquired by the claimant wife in August, 1928, the consideration being $3,449.40, of which the wife swore she paid from out of her own personal funds $1,062.60 in cash, and assumed an indebtedness represented by a lien on the premises of $2,278.80. The second of said tracts was acquired by her in November, 1928, the consideration being $1500 cash, which the wife swore that she paid out of the bank account of the "Plant & Produce Store" owned by her, and operated by her through her husband, who looked after it for her; that by the terms of the exchange deed executed in November, 1928, she paid an additional $300 of her money, the undisputed testimony showing that this amount came from funds belonging to "Plant & Produce Store," and that the grantee in the deed from her assumed and agreed to pay the $2000 loan which she had assumed under the previous deed to her. Movant says that her testimony that she accumulated the funds thus expended, which to us appear to have aggregated about $3000, during the years 1924, 1925, 1926, 1927, and 1928, by her farm and stock activities and by operating the "Plant & Produce Store," is so "preposterous" that no jury would have believed it, despite the fact, as we construe the record, that her evidence was wholly uncontradicted. There was evidence for the plaintiff in fi. fa., by one witness, that his dealings with the "Plant & Produce Store" were through the husband of claimant; but the witness did not testify as to the ownership of the business, or in any wise contradict claimant's testimony that the husband looked after it for

the wife. It is true that the debt represented by the fi. fa. against the husband was contracted in 1925, before the time during which he acted for his wife in the conduct of her business; but even so, there is no inhibition in the law against his doing so. In *Brand* v. *Bagwell*, 133 *Ga.* 750 (4) (66 S. E. 935), the court approved the following charge: "I charge you that if it appears by a preponderance of the testimony in this case that the husband of the claimant conducted her business and contributed his services free of charge to her, he had a legal right to do so, and none of his legal creditors have the legal right to object to it. A person, though insolvent, can legally give away his services, and the so doing is not a fraud on his creditors." Citing *Wilson* v. *McMillan*, 62 *Ga.* 16 (35 Am. R. 115). It seems to us, therefore, as stated in the original syllabus, that it has been made to appear without dispute that the wife with the consent of her husband and his assistance as her agent acquired a separate estate, from the proceeds of which she purchased the two tracts of land from third persons and acquired title thereto in her own name, and that subsequently, in exchanging the two tracts of land for another and different tract owned by a different third person, the husband, acting in the transaction as agent for his wife, without her knowledge or consent, had the title of the property represented by the new deed, taken in the exchange, executed jointly to himself and his wife; and since it further appears without dispute that very shortly thereafter, in fact within ten days, and immediately upon her discovery that the title taken in exchange had not been made to her alone but to her and her husband jointly, she protested to her husband, and, in response to such protest, received from him a quitclaim deed to the property taken in exchange, stating as its consideration the natural love and affection of the husband for the wife, the wife, upon showing these facts without dispute, "could explain the true consideration of the quitclaim deed, and, upon so doing, was entitled as a matter of law to prevail in her claim to the property, as against a creditor of her husband." The record in point of fact fails to indicate that during the years that the wife earned and acquired the funds going into the purchase of the two tracts of land, her husband was insolvent. The conveyances by which she acquired these properties were not between husband and wife. There is nothing about her

uncontradicted testimony which to us seems impossible, incredible, or inherently improbable. Any conclusion that she acquired the properties with money belonging to her husband would necessarily not be based on the evidence or any reasonable deduction made therefrom, but would have to be founded on mere surmise and unsupported speculation, and contrary to all the evidence in the case.                                             *Rehearing denied.*